UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARNI TRUGLIO, on behalf of herself and all others similarly situated,<br><br>Plaintiff(s),<br><br>-against-<br><br>PLANET FITNESS, INC; FIT TO BE TIED II, LLC d/b/a PLANET FITNESS; JOHN DOES 1-75; PLANET FITNESS FRANCHISES 1-75; and XYZ CORPORATIONS 1-10,<br><br>Defendant(s). | CIVIL ACTION NO. 15-cv-7959<br><br><br>CIVIL ACTION |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' SEPARATE MOTIONS TO DISMISS AND MOTIONS TO STRIKE CLASS ACTION ALLEGATIONS**

Law Offices of Joseph K. Jones, LLC
375 Passaic Avenue, Suite 100
Fairfield, New Jersey 07004
(973) 227-5900 telephone
(973) 244-0019 facsimile

*Attorneys for Plaintiff*

On the Memorandum:

Joseph K. Jones, Esq.
Benjamin J. Wolf, Esq.

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

Table of Authorities.................................................................................................iii

STATEMENT OF FACTS / PRELIMINARY STATEMENT.......................................1

PROCEDURAL HISTORY.........................................................................5

ARGUMENT..........................................................................................5

    I.     Legal Standard For A Motion To Dismiss Pursuant to FRCP 12(b)(6)................5

    II.    Plaintiffs Have Sufficiently Pled Claims Under the HCSA and CFA...................6

         A.    The Broad Reach of the CFA.......................................................6

         B.    Defendants' contract violate the HCSA Because It Fails to Set Forth the New Jersey Consumer's Total Payment Obligation.............................8

         C.    Defendants' Membership Agreement Fails to State That a Bond Is On File With the New Jersey Division of Consumer Affairs.........................10

         D.    The Cancellation Policy in Defendants' Membership Agreement Is Misleading...................................................................................11

         E.    Plaintiffs Have Sufficiently Pled Ascertainable losses Under the CFA....13

    III.    Plaintiff Has Sufficiently Pled Claims Under the Truth in Consumer Contract, Warranty and Notice Act (TCCWNA)................................................16

         A.    Overview of TCCWNA.............................................................16

         B.    Plaintiffs have sufficiently pled TCCWNA claims based on N.J.S.A. 56:12-15 (prohibiting provisions in consumer contracts that violate New Jersey law)........................................................................18

             i.    TCCWNA violations predicated on violations of the HCSA and CFA in the Membership Agreements...........................................18

             ii.    Defendants' argument that "ascertainable loss" is necessary to sustain TCCWNA claims predicated on CFA violations is contrary to the law.......................................................19

i

IV.     The <u>Ardino</u> and <u>McCarthy</u> Decisions Should Be Dispositive As to Whether
        Plaintiff Properly Stated a Claim..........................................................................21

V.      Defendants' Motion to Strike the Class Action Allegations Should Be Denied
        as Premature........................................................................................................23

CONCLUSION.....................................................................................................................26

## TABLE OF AUTHORITIES

Page

**Cases**

A&L Industries, Inc. v P. Cippolini, 2013 WL 5503303  (D. New Jersey October 2, 2013)........25

Ardino v Retrofitness, MID-L-362-14 (May 14, 2015)...................................................4,11,21-23

Ardino v Retrofitness, MID-L-362-14 (July17, 2015)....................................................4,11,21-23

Barrows v. Chase Manhattan Mortg. Corp., 465 F.Supp.2d 347 (D.N.J. 2006)............16-17,19,21

Barry v. Arrow Pontiac, 100 N.J. 57 (1985).................................................................................7

Bosland v. Warnock Dodge, 396 N.J. Super. 267 (App. Div. 2007)..............................................17

Bosland v Warnock Dodge, Inc., 197 N.J. 543 (2009).......................................................6-7,13,17

Bush v Calloway Consolidated Group River City, Inc, 2012 WL 101 6871 (March 26, 2012)...25

Caminetti v. United States, 242 U.S. 470 (1917)..............................................................................8

Channel Companies, Inc. v. Britton, 167 N.J.Super. 417 (App.Div.1979)....................................7

Chaykowsky v. Marut, 2012 WL 3870317 (App.Div.2012)..........................................................14

Chulsky v Hudson Law Offices, P.C., 2011 U.S. Dist. LEXIS 13476 (D.N.J. 2011)....................5

City Select Auto Sales Inc.v David Randall Associates, Inc, 296 F.R.D. 299
    (D. New Jersey 2013)....................................................................................................25-26

Clark v. McDonald's Corp., 213 F.R.D. 198  (D.N.J. 2003)....................................................23,26

Cox v. Sears Roebuck & Co., 138 N.J. 2 (1994)......................................................................11-15

Division of Consumer Affairs v. G.E. Co., 244 N.J.Super. 349 (App.Div.1990)........................12

Ehren v Moon, Inc, 2010 WL 5014712 (S.D. Fla, Dec 3, 2010)...................................................25

Fenwick v. Kay American Jeep, Inc., 136 N.J.Super 114 (App.Div. 1975)................................12

Fenwick v. Kay American Jeep, Inc., 72 N.J. 372 (1975)............................................................12

Gen. Tel. Co. v. Falcon, 457 U.S. 147 (1982).............................................................................24

Hartford Underwriters Ins. Co. v. Union Planters Bank, N. A., 530 U.S. 1 (2000)......................8

Huffmaster v. Robinson, 221 N.J.Super. 315 (Law Div.1986)....................................................14

Kent Motor Cars, Inc. v. Reynolds & Reynolds Co., 207 N.J. 428 (2011)....................................16

Lamie v. U.S. Treasury., 540 U.S. 526 (2004)............................................................................8

Landsman & Funk PC v. Skinder-Strauss Assocs., 640 F.3d 72 (3d Cir. 2011).....................23-24

Lemelledo v. Beneficial Mgmt. Corp. of Am., 150 N.J. 255 (1997)...........................................7

Lettenmaier v. Lube Connection, Inc., 162 N.J. 134 (1999)....................................................7

Local Baking Prods. v Kosher Bagel Munch, Inc., 421 N.J. Super 268 (N.J.App Div. 2011)......25

Martin v. American Appliance, 174 N.J.Super. 382 (Law Div.1980)...........................................7

Martina v. LA Fitness, 2012 WL 3822093 (D.N.J.2012)(Walls, S.D.J.)......................................12

Mason v. Coca-Cola Co, 774 F. Supp. 2d. 699 (D. New Jersey 2013).........................................15

McCarthy v Equinox, UNN-L-0789-15 (July 9, 2015)...............................................4,11,15,21-23

McGarvey v. Penske Auto. Group, 639 F. Supp. 2d 450 (D.N.J. 2009)..................................20-21

McGarvey v. Penske Auto. Group, 486 Fed. Appx. 276 (3d Cir. N.J. 2012)...............................20

Meshinsky v. Nichols Yacht Sales, Inc., 110 N.J. 464 (1988)...............................................11,19

Phillips v County of Allegheny, 515 F.3d 224 (3rd Cir. 2008)........................................................5

Pilgrim v. Universal Health Card, LLC, 660 F.3d 943 (6th Cir. 2011).........................................24

Rivers v Credit Suisse Boston Financial Corp., 2007 U.S. Dist. LEXIS 23621 (D.N.J. 2007).......5

Sauro v L.A. Fitness Intern, LLC, 2013 WL 978807 (D. New Jersey February 13, 2013)...........15

Scibek v. Longette, 339 N.J.Super. 72 (App.Div.2001)...........................................................7,14

Shelton v. Restaurant.com Inc., 543 Fed. Appx. 168 (3d Cir. N.J. 2013)....................................20

Skeer v. EMK Motors, Inc., 187 N.J.Super. 465 (App.Div.1982)................................................11

Smajlaj v. Campbell Soup Co., 782 F. Supp. 2d 84 (D.N.J. 2011)...............................................11

Smith v Paramount Recovery Systems, 2008 U.S. Dist. LEXIS 93690 (D.N.J. 2008)...................5

Szabo v Bridgeport Machines, Inc, 249 F. 3d 672 (7th Cir. 2001)..........................................24-25

Tribuzio v. Roder, 356 N.J.Super. 590 (App.Div.2003)........................................................7

United Consumer Financial Services Co. v. Carbo, 410 N.J. Super. 280 (App.Div.2009)..........17

United States v. Ron Pair Enterprises, Inc., 489 U.S. 235 (1989)....................................8

Wilson v. Consolidated Rail Corp., 2014 U.S. Dist. LEXIS 48209 (D.N.J. Apr. 8, 2014)..........24

Wilson v Kia Motors America, Inc., 2015 WL 3903540 (D. N.J. 2015)......................................21

**Statutes**

Federal Rule of Civil Procedure (FRCP) 12(b)(6)..........................................................5

FRCP 23(b)(3)..................................................................................................26

15 U.S.C.A. 2301 *et seq*, the Magnuson Moss Warranty Act (MMWA).....................................20

47 U.S.C. 227(1)(C) Telephone Consumer Protection Act (TCPA)............................................25

N.J.A.C. 13:45A–16.2(a)(12)..................................................................................14

N.J.S.A. 56:8-1 *et seq*.,  the Consumer Fraud Act (CFA)..........................2-4,6-7,11,13-21,23,26

N.J.S.A. 56:8-39 *et seq*., the Health Club Services Act (HCSA).......1-4,6-11,14-5,18-19,21,23,26

N.J.S.A. 56:12-14 to 18, the Truth in Consumer Contract, Warranty and Notice Act
      (TCCWNA)..................................................................................2-4,15-23,26

**Miscellaneous Authorities**

Black's Law Dictionary (1999).................................................................................8-9

Norman J. Singer & J.D. Shambie Singer, 3 SUTHERLAND STATUTORY
      CONSTRUCTION, § 60:2 (7th Ed. 2009).......................................................................7

Joseph K. Jones, Esq.
Benjamin J. Wolf, Esq.
LAW OFFICES OF JOSEPH K. JONES, LLC
375 Passaic Avenue, Suite 100
Fairfield, New Jersey 07004
(973) 227-5900 telephone
(973) 244-0019 facsimile

*Attorneys for Plaintiff Marni Truglio, on behalf of herself and all others similarly situated*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARNI TRUGLIO, on behalf of herself and all others similarly situated , <br><br> Plaintiffs, <br><br> v. <br><br> PLANET FITNESS, INC; FIT TO BE TIED II, LLC d/b/a PLANET FITNESS; JOHN DOES 1-75; PLANET FITNESS FRANCHISES 1-75; and XYZ CORPORATIONS 1-10, <br><br><br> Defendants. | CIVIL ACTION NO. 15-cv-7959 <br><br><br> **PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' SEPARATE MOTIONS TO DISMISS AND MOTIONS TO STRIKE CLASS ACTION ALLEGATIONS** |

## STATEMENT OF FACTS / PRELIMINARY STATEMENT

What is the total payment obligation[1] for a consumer in New Jersey to join a Planet Fitness health club? Why doesn't Planet Fitness' form contracts comply with New Jersey law and state that a bond is filed with the Division of Consumer Affairs? Why is Planet Fitness' cancellation policy so misleading that it results in extra payments being paid by a New Jersey consumer? Put simply--Defendants' motions to dismiss fail to provide this Court with any argument as to what the total payment obligation is for a New Jersey consumer to join a Planet

---

[1] Defendants even misstate the language of the New Jersey Health Club Services Act (HCSA) and use "Total Payment *Commitment*" when the statute states "Total Payment *Obligation*". *See* ECF No. 11-1, p. 12.

Fitness health club, fail to dispute that their form contracts do not state a bond is filed with the Division of Consumer Affairs, and offer no explanation as to their misleading cancellation policy. *See* ECF No. 1-3.

After parsing through all of the colorful phrases[2], and incorrect arguments, in Defendants' papers (particularly Defendants' misinterpretation for the requirements of pleading an "ascertainable loss"(*infra* **Section II(E), Section III**), Plaintiff respectfully submits this Court will determine that Defendants fail to sustain their burden on a motion to dismiss and/or motion to strike Plaintiff's class action allegations. *See* ECF No. 11-1, pp. 11-12, 18-19.  Accordingly, Plaintiff has properly pled Defendants' violations of N.J.S.A. 56:8-39 *et seq.*, the Health Club Services Act (HCSA); N.J.S.A. 56:8-1 *et seq.*,  the Consumer Fraud Act (CFA), and 56:12-14 to 18, the Truth in Consumer Contract, Warranty and Notice Act (TCCWNA).  *See* ECF 1-3.

As alleged in the First Amended Complaint ("Complaint"), Plaintiff is a New Jersey consumer who entered into a health club contract ("Membership Agreement") with a New Jersey Planet Fitness franchise called FIT TO BE TIED II, LLC d/b/a PLANET FITNESS (the "franchisee Defendant") located in Brick, New Jersey.   *See* ECF 1-3. The Membership Agreement was drafted by Defendant, PLANET FITNESS ("Planet Fitness)". Id. The Complaint alleges that the franchisee Defendant and PLANET FITNESS acted in concert as co-sellers of the health club services at issue, which was a fixed-term membership that was financed through monthly payments. Id. As further alleged in the Complaint, the Membership Agreements violate New Jersey consumer protection laws, including the HCSA, CFA and TCCWNA. Id

With respect to the HSCA and the CFA claims, the Complaint alleges that the Defendants extracted dues for one or more months beyond the Plaintiffs' contracted-for membership periods

---

[2] "No harm, no foul", "...alphabet soup of state statutes...", "...house of cards built upon a shady foundation.". *See* ECF 11-1, p. 7.

2

by inserting the following provision into the Membership Agreement:

> "To cancel your membership and stop monthly billing on the 17th of the month, the club requires written notification by the 10th of the month delivered to the club in person or preferably via certified mail. Any monthly membership can be cancelled upon thirty days notice."

*See* ECF No. 1-3.

Accordingly, and as more fully set forth in the Complaint, given that written notification of cancellation of the Membership Agreement by a consumer must be completed "by the 10th of the month" (to avoid the monthly charge on the 17th of each month) but also upon "thirty days notice", in reality, the written notification must be completed within thirty-seven (37) days notice. Id. This is confusing and/or misleading language in that Defendants' Membership Agreement results in consumers being forced to pay for, at least, one additional month of membership at Defendants' health club after they cancel the contract. Id.

The HCSA is a supplemental provision of the CFA, and the unlawfully charged dues payments constitute violations of the CFA. Additionally, the Complaint alleges that such practices constitute unconscionable commercial practices in violation of the CFA. With respect to the CFA claims raised in connection with the unlawful renewal and cancellation provisions, Plaintiff must plead an ascertainable loss. *Infra* **Section II**. To that end, the Complaint alleges that the additional months' dues and other monthly fees that consumers were charged as a result of these provisions constitutes an ascertainable loss, and entitles Plaintiffs to treble the amount of the alleged unlawful dues payments, pursuant to the CFA.  *See* ECF No. 1-3.

In addition to remedies under the CFA, Plaintiff contends that the Defendants' violations of the HSCA and the CFA give rise to claims under TCCWNA, which provides a private right of action for statutory damages of not less than $100 whenever a business offers or enters into a

consumer contract that violates any other New Jersey or federal law. *See* ECF No. 1-3. In addition to the HCSA and CFA violations already discussed, the Complaint alleges that the Membership Agreement contains additional provisions in violation of the HCSA, including, but not limited to, a disclosure provision that fails to provide the customers' total payment obligation as required by the HCSA, and an omission of a statement regarding the health clubs' bonding requirements. *Infra* **Section II;** *see also* ECF 1-3.

Defendants appear to try and shift the burden that is required of them for a motion to dismiss and force Plaintiff to prove elements regarding the CFA, HCSA, and TCCWNA in the Complaint that the statutes simply do not require. *See* ECF No. 11-1, pp. 14-18. Defendants view the obvious deficiencies in the Membership Agreements as minor issues that should have no repercussions. *Supra* FN 2. However, Defendants provide no information, or in some cases wrong information (for example, as to their argument regarding ascertainable loss), for the many violations in the Membership Agreements, and therefore do not sustain their burden on a pre-answer motion to dismiss. *See also* ECF No. 11-1, pp. 14-18.

Finally, it should be noted, and as set forth in more detail below, New Jersey courts, in two different counties (Union and Middlesex), have recently denied motions to dismiss on many of the same statutes/claims as alleged by the Plaintiff here. *See* opinions in <u>Ardino v Retrofitness,</u> MID-L-362-14 dated May 14, 2015[3] and July 17, 2015[4] annexed as **<u>Exhibit A</u>** and **<u>Exhibit B</u>** to the Certification of Benjamin J. Wolf, Esq. ("Wolf Cert"); *see also* opinion in <u>McCarthy v Equinox</u>, UNN-L-0789-15 dated July 9, 2015 annexed as **<u>Exhibit C</u>** to the Wolf Cert. *Infra*

---

[3]This decision involved a motion to dismiss.

[4]This decision involved a motion for reconsideration of that court's May 14, 2015 order. *See* **<u>Exhibit A</u>**.

Section IV[5]. While the respective state courts issued unpublished decisions, which are not binding on this Court, they are persuasive in support of denying Defendants' motions to dismiss as they focus on similar issues alleged in Plaintiff's Complaint here. *See* **Exhibit A**; **Exhibit B**, **Exhibit C**

# PROCEDURAL HISTORY

In October 2015, Plaintiff, Marni Truglio,  filed her First Amended Complaint in the New Jersey Superior Court, Law Division, Monmouth County against Defendants. *See* ECF No. 1-3. Defendants removed the state action to the United States District Court for the District of New Jersey.  Id. Defendants then each filed motions to dismiss Plaintiffs' claims pursuant to Federal Rule of Civil Procedure (FRCP) 12(b)(6)(i.e., that Plaintiff fails to state a claim). *See* ECF No. 11-1; ECF No. 12. In addition, Defendants further moved to strike Plaintiffs' class action allegations.  Id.

# ARGUMENT

## I.      Legal Standard For A Motion To Dismiss Pursuant to FRCP 12(b)(6)

A motion to dismiss for failure to state a claim upon which relief can be granted does not attack the merits of the action, but rather tests the legal sufficiency of the complaint. *See* Rivers v Credit Suisse Boston Financial Corp., 2007 U.S. Dist. LEXIS 23621 (D.N.J. 2007). The question is not whether plaintiff will prevail at trial, but whether she should be given an opportunity to offer evidence in support of her claims. *See* Smith v Paramount Recovery Systems, 2008 U.S. Dist. LEXIS 93690 (D.N.J. 2008).

---

[5] Plaintiff's counsel here also represented the plaintiffs in both the Ardino and McCarthy matters.

"In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a Court must take all allegations in the complaint as true, viewed in the light most favorable to the plaintiff, 'and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" Chulsky v Hudson Law Offices, P.C., 2011 U.S. Dist. LEXIS 13476 (D.N.J. 2011), *quoting* Phillips v County of Allegheny, 515 F.3d 224, 233 (3rd Cir. 2008).

## II.   Plaintiffs Have Sufficiently Pled Claims Under the HCSA and CFA

### A.   The Broad Reach of the CFA

The Second Count of the Complaint alleges violations of the HCSA and the CFA on behalf of Plaintiffs and Subclass #1 as defined as

> **CLASS:** All persons who, at any time on or after the day six (6) years prior to the day on the original Complaint was filed, enrolled in a health club membership at and/or for use at any Planet Fitness health club located in New Jersey, where the Membership Agreement used to enroll that person contained terms the same or similar to the Membership Agreement used in the transactions with the named Plaintiff.

> **SUB-CLASS #1:** All members of the Class who cancelled or attempted to cancel their Membership Agreement, and who were charged additional monthly payments after the cancellation date.

*See* ECF No. 1-3.

Plaintiff has alleged sufficient facts at this early motion to dismiss stage to support claims based on numerous violations of the HSCA and the CFA.  The CFA at N.J.S.A. 56:8-2 states in relevant part:

> "The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled,

deceived or damaged thereby, is declared to be an unlawful practice..."

"To state a claim under the Act, Plaintiff must allege sufficient facts to demonstrate: (1) unlawful conduct; (2) an ascertainable loss; and (3) a causal relationship between the unlawful conduct and the ascertainable loss." *See* Bosland v Warnock Dodge, Inc., 197 N.J. 543 (2009). Moreover, N.J.S.A. 56:8-46 expressly states that any violation of the HSCA is a *per se* violation of the CFA.

"The language of the CFA evinces a clear legislative intent that its provisions be applied broadly in order to accomplish its remedial purpose, namely, to root out consumer fraud." Lemelledo v. Beneficial Mgmt. Corp. of Am., 150 N.J. 255, 264 (1997) (*citing* Barry v. Arrow Pontiac, 100 N.J. 57, 69 (1985); Martin v. American Appliance, 174 N.J.Super. 382, 384 (Law Div.1980)). "Moreover, the Act is to be liberally construed in favor of the consumer."  Scibek v. Longette, 339 N.J.Super. 72, 78, (App.Div.2001) (*citing* Lettenmaier v. Lube Connection, Inc., 162 N.J. 134, 139 (1999)). "The legislative concern was the victimized consumer, not the occasionally victimized seller." Channel Companies, Inc. v. Britton, 167 N.J.Super. 417, 418 (App.Div.1979).

In interpreting remedial statutes, a liberal construction includes those cases which are within the spirit of the law, and all reasonable doubts should be construed in favor of the applicability of the statute to the case.   Norman J. Singer & J.D. Shambie Singer, 3 SUTHERLAND STATUTORY CONSTRUCTION, § 60:2 (7th Ed. 2009); *see also* Tribuzio v. Roder, 356 N.J.Super. 590, 596 (App.Div.2003) ("Remedial statutes should be construed liberally, giving their terms the most extensive meaning of which they are reasonably susceptible.").

Thus, in analyzing the Complaint's allegations under the CFA and the HCSA, any

7

doubts should be resolved in favor of application of the statutes, especially at this early stage of litigation before Plaintiff has even had an opportunity to engage in any discovery.

**B.    Defendants' contract violate the HCSA Because It Fails to Set Forth the New Jersey Consumer's Total Payment Obligation**

The HSCA requires that *all* health club contracts include a conspicuous total payment obligation on the first page. To that end, N.J.S.A. 56:8-42(b) provides that:

> A health club services contract **shall specifically set forth in a conspicuous manner** on the *first page* of the contract **the buyer's total payment obligation for health club services to be received** pursuant to the contract.(emphasis added).

Defendants do not dispute that the Membership Agreement fails to comply with the requirements of the HCSA as it fails to state the consumer's "Total Payment Obligation" for a health club membership at PLANET FITNESS. *See* ECF No. 11-1, pp. 12-16. Defendants sole arguments on this issue focus exclusively on ascertainable loss and proximate cause. Id.

However, even assuming, *arguendo*, that Defendants argued that "total payment obligation" at N.J.S.A. 56:8-42(b) does not mean that all payments must be stated as an aggregate sum, but instead simply means that any payments that may become due under the contract must be stated somewhere in the contract, this is contrary to the plain language of the statute and basic principles of statutory construction.

It is well established that "when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." Lamie v. U.S. Treasury., 540 U.S. 526, 534 (2004)( *citing* Hartford Underwriters Ins. Co. v. Union Planters Bank, N. A., 530 U.S. 1, 6 (2000)(internal quotation marks omitted)(*quoting* United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 241 (1989), *in turn quoting* Caminetti v. United States, 242 U.S. 470, 485 (1917)).

8

As to the words/phrase "Total Payment Obligation", "Total" is defined by Black's Law Dictionary (1999) as "**1.** Whole; ***not divided***; full; complete" (emphasis added). "Payment" is defined as "**1.** Performance of an obligation, usu. by the delivery of money." Id. "Obligation" is defined as "**2.** A formal, binding agreement...of a liability to pay a certain amount...". Id. Accordingly, any opinion by Defendants that the amount due on the contract should be anything other than the total, "whole" or "not divided" amount for 12 months is wrong based on the simple legal definitions of these terms.

Defendants are simply unable to overcome the obvious fact that nowhere in Plaintiff's Membership Agreement is the "total payment obligation" amount stated. For example, given that the Membership Agreement is for a minimum of 12 months, it fails to set forth that Plaintiff's total payment obligation under the contract is required to be stated as follows:

**First Month Prorate = $11.33 +**

**Annual Membership Fee = $39.00 +**

**$19.99 x 11 months =219.89 for a total payable obligation of $270.22.**

However, nowhere in her Membership Agreement does the total amount of $270.22 appear.

Arguably, Defendants want Plaintiff, and other potential/current members, to engage in the necessary calculus to determine their respective "total payment obligation" to join their health club. This is not what is required by New Jersey statute or by a simple definition of the terms. Simply stated, Defendants fail to set forth in a conspicuous manner on the first page of the Membership Agreements the consumer's total payment obligation as required by HCSA at N.J.S.A. 56:8-42(b).

At a minimum, other New Jersey state courts, have recently denied motions to dismiss by other health clubs when plaintiffs have pled this very same argument regarding the HCSA's

requirement that health club contracts state the consumer's total payment obligation. *Infra* **Section IV**; *see also*, **Exhibit A; Exhibit B; Exhibit C.** Accordingly, it is respectfully submitted, for pleading purposes, Plaintiff has stated a claim for Defendants' violations of the HCSA.

### C.    Defendants' Membership Agreement Fails to State That a Bond Is On File With the New Jersey Division of Consumer Affairs

As set forth in the Complaint,  the HCSA states the following:

> A person who sells or offers for sale health club services shall, for each health club facility operated in the State, maintain a bond issued by a surety authorized to transact business in this State or maintain an irrevocable letter of credit by a bank or maintain with the director securities, moneys or other security acceptable to the director to fulfill the requirements of this subsection. … The bond, letter of credit, or securities, moneys or other security shall be filed or deposited with the director and shall be executed to the State of New Jersey for the use of any person who, after entering into a health club services contract, is damaged or suffers any loss by reason of breach of contract or bankruptcy by the seller.

*see* N.J.S.A. 56:8-41(a)

The HCSA further states:

> A health club services contract of a health club facility which maintains a bond, irrevocable letter of credit or securities, moneys or other security pursuant to subsection a. of section 3 of this act shall set forth that a bond, irrevocable letter of credit or securities, moneys or other security is filed or deposited with the Director of the Division of Consumer Affairs to protect buyers of these contracts who are damaged or suffer any loss by reason of breach of contract or bankruptcy by the seller.

*See* N.J.S.A. 56:8-42(c)

Defendants are unable to dispute the fact that their Membership Agreement further violates the HCSA because it fails to state that a bond, irrevocable letter of credit or securities, moneys or other security is filed or deposited with the Director of the Division of Consumer

10

Affairs to protect customers who are damaged or suffer any loss by reason of breach of contract or bankruptcy. *See* HCSA at N.J.S.A. 56:8-41(a) and 56:8-42(c). In fact, this argument is not even addressed by Defendants in their motion papers. *See* ECF No. 11-1; ECF No. 12. Accordingly, hundreds if not thousands of Membership Agreements in New Jersey used by Defendants do not state that a bond, irrevocable letter of credit or securities, moneys or other security is filed or deposited with the Director of the Division of Consumer Affairs to protect customers who are damaged or suffer any loss by reason of breach of contract or bankruptcy.

Similar to Plaintiff's HCSA allegations regarding Defendants' failure to state the consumer's total payment obligation, the Ardino and McCarthy decisions are also instructive regarding Defendants' failure to state that a bond is on file with the Department of Consumer Affairs in their Membership Agreement. *Supra* **Section II(B);** *see also* **Exhibit A; Exhibit B; Exhibit C**. Accordingly, in Ardino and McCarthy, motions to dismiss were denied where those plaintiffs also alleged that their respective health club contracts failed to state a bond is on file with the Department of Consumer Affairs. *Infra* **Section IV**.

**D**.      **The Cancellation Policy in Defendants' Membership Agreement Is Misleading**

Under  N.J.S.A. 56:8-2 proscribed conduct violates the CFA "whether or not any person has in fact been misled, deceived or damaged thereby". *See* Smajlaj v. Campbell Soup Co., 782 F. Supp. 2d 84, 98 (D.N.J. 2011)("the fact that the labels were literally true does not mean they cannot be misleading to the average consumer"). This is because it has been well established that "the Consumer Fraud Act protects consumers from unfair practices "even when, a merchant acts in good faith." *Id.* (*citing* Cox v. Sears Roebuck & Co., 138 N.J. 2 (1994)).

In fact, "to prove a violation of section 56:8-2, it is not necessary to show actual deceit or a fraudulent act; any unconscionable commercial practice is prohibited." Meshinsky v. Nichols

11

_____, 110 N.J. 464, 472 (1988) (*citing* <u>Skeer v. EMK Motors, Inc.</u>, 187 N.J.Super. 465 (App.Div.1982)). An unconscionable commercial practice is a deliberately vague concept, encompassing acts lacking in "good faith, honesty in fact, and observance of fair dealing." <u>Fenwick v. Kay American Jeep, Inc.</u>, 136 N.J.Super 114, 116 (App.Div. 1975), *rev'd on other grounds*, 72 N.J. 372 (1975). A practice can be unlawful "even if no person was in fact misled or deceived thereby." <u>Cox v. Sears</u>, *supra*, 138 N.J. 2, 25.

In fact, in <u>Martina v. LA Fitness,</u> 2012 WL 3822093 (D.N.J.2012)(Walls, S.D.J.) the court held that even though the consumers may not have been "conned", LA Fitness's cancellation policy constituted an unconscionable practice under the CFA because it did not promote intelligent and fully informed decision-making. <u>Martina</u>, 2012 WL 3822093, at *3 (*citing* <u>Division of Consumer Affairs v. G.E. Co.</u>, 244 N.J.Super. 349 (App.Div.1990) (the purpose of the CFA is to "promote the disclosure of relevant information to enable the consumer to make intelligent decisions"). As Judge Walls expressly emphasized in the <u>Martina</u> opinion:

> if a person was deciding between two gyms, she would be better able to compare prices if an extra month's worth of membership dues were simply included in a higher initiation fee or itemized as "last two months' dues" rather than cloaked in the cancellation policy.

*Id*.

> Plaintiff alleges that the Membership Agreement states:

>> "To cancel your membership and stop monthly billing on the 17th of the month, the club requires written notification by the 10th of the month delivered to the club in person or preferably via certified mail. Any monthly membership can be cancelled upon thirty days notice."

Accordingly, and as more fully set forth in the Complaint, given that written notification of cancellation of the Membership Agreement by a consumer must be completed "by the 10th of the month" (to avoid the monthly charge on the 17th of each month) but also upon "thirty days

12

notice", in reality, the written notification must be completed within thirty-seven (37) days notice. *See* ECF No. 1-3. This is confusing and/or misleading language in that the Membership Agreement results in consumers being forced to pay for, at least, one additional month of membership at Defendants' health club after they cancel the contract.

### E. Plaintiffs Have Sufficiently Pled Ascertainable losses Under the CFA

"The CFA does not demand that a plaintiff necessarily point to an actually suffered loss or to an incurred loss, but only to one that is 'ascertainable.'" <u>Bosland</u> 197 N.J. at 559 (holding that simply charging an unlawful fee creates an ascertainable loss). "[R]equiring a consumer to actually make the expenditures needed to incur the loss would be contrary to the remedial purposes of the CFA." *Id.*

Here, the Complaint clearly alleges that the following is stated in the Membership Agreement:

> "To cancel your membership and stop monthly billing on the 17th of the month, the club requires written notification by the 10th of the month delivered to the club in person or preferably via certified mail. Any monthly membership can be cancelled upon thirty days notice."

*See* ECF No. 1-3.

Given that written notification of cancellation of the Membership Agreement by a consumer must be completed "by the 10th of the month" (to avoid the monthly charge on the 17th of each month) but also upon "thirty days notice", in reality, the written notification must be completed within thirty-seven (37) days notice. Id. This results in consumers being forced to pay for, at least, one additional month of membership at Defendants' health club after they cancel the contract. <u>Id.</u>

Whether she or any Sub Class #1 members actually paid the extra fees that were

demanded of them does not matter. Cox v. Sears Roebuck & Co., *supra*, 138 N.J. at 23 ("We conclude that an improper debt… against a consumer-fraud plaintiff may constitute a loss under the Act, because the consumer is not obligated to pay an indebtedness arising out of conduct that violates the Act."). The Complaint refers to fees that were wrongfully charged, thus satisfying the ascertainable loss requirement of the CFA.

Furthermore, when, as here, the consumer fraud occurred in the actual contract or at the time of contracting, the entire amount paid under the contract is the measure of damages under the CFA. Cox, 138 N.J. at 23; *see also* Huffmaster v. Robinson, 221 N.J.Super. 315 (Law Div.1986) (holding that notwithstanding defendant's good faith, contract in violation of CFA unenforceable and awarding treble damages based on the entire contract price because such contracts ―are void, being contrary to public policy as expressed in the act … or … [t]hey have not been consummated because the conditions precedent established by the Act have not been fulfilled‖); *accord* Scibek, 339 N.J.Super. 72.

Here, Plaintiff alleged that she was a party to a Membership Agreement that violated the HCSA and the CFA for the numerous reasons stated in the Complaint and in this brief (failure to disclose information about a bond, letter of credit or that there is a security filed with the DCA; failure to disclose total payment obligation; and that the Membership Agreement contained a misleading cancellation policy). *Supra* **Section II (A)-(D)**  All violations occurred in the actual contract, thus making the ascertainable loss damages the amounts paid under the contract. *See* Chaykowsky v. Marut, 2012 WL 3870317 at *4 (App.Div.2012) (holding Plaintiffs were entitled to an award of treble damages under the CFA because "defendants violated N.J.A.C. 13:45A–16.2(a)(12), which requires home improvement contracts in excess of $500 to be in writing and to contain specific information.")

As this matter is only at the pleading stage, and not one piece of discovery has been exchanged, Defendants appear to confuse "ascertainable" loss with "actual" loss. *See* ECF No. 11-1, pp. 12-14.  This not what is required by the statute. As aptly stated by the court in the McCarthy decision on this issue:

> "...Plaintiffs allege that they have been harmed by Defendant's Membership Agreements in that they impose unreasonable and onerous requirements to cancel their gym memberships, fail to conspicuously state Plaintiff's total payment obligations, and fail to state that a bond, irrevocable letter of credit or securities, moneys or other security is filed or deposited with the Director of consumer affairs...Similar to plaintiffs in Cox v Sears Roebuck & Co., Plaintiffs here allege that they have been harmed by Defendants failure to comply with certain statutory provisions, namely the HCSA, CFA...and TCCWNA. As a result, Plaintiffs have pleaded an ascertainable loss sufficient to confer them with standing under R. 4:26-1. "

*See* **Exhibit C**, p. 5.

Given that Plaintiff has established she has pled an ascertainable loss, Defendants' proximate cause argument, and relied upon cases, are unconvincing. *See* ECF 11-1, pp. 15-16. For example, neither Sauro v L.A. Fitness Intern, LLC, 2013 WL 978807 (D. New Jersey February 13, 2013) nor Mason v. Coca-Cola Co, 774 F. Supp. 2d. 699 (D. New Jersey 2013) address claims similar to Plaintiff regarding payment or extra fees paid due to misleading and confusing cancellation policies. *Supra* **Section II (A)-(D)**. Specifically, the claims in Sauro, for example, allege CFA and TCCWNA violations based on hold harmless language in defendant's contract, the indemnification provision of the contract being unconscionable, the special damages in the contract provision contravenes the CFA and TCCWNA, and challenges the entire format of the contract itself. Id. at p. *2. Similarly, the claims in Mason involved claims on the label of that defendant's product, not about the cost or additional charges to the plaintiff. Id. at p. 703.

For the reasons set forth above, Plaintiffs have sufficiently alleged facts to support their claims under the CFA.

### III.   Plaintiff Has Sufficiently Pled Claims Under the Truth in Consumer Contract, Warranty and Notice Act (TCCWNA).

#### A.   Overview of TCCWNA

In addition to the claims based on the CFA and HCSA, the Complaint raises claims for mandatory civil penalties under TCCWNA based on allegations that the Membership Agreements used in Plaintiff's transactions violated TCCWNA. Specifically, the Complaint alleges that the form Membership Agreements included multiple provisions that violated various New Jersey laws, including the HSCA and the CFA, in violation of TCCWNA's prohibition at N.J.S.A. 56:12-15 against such provisions in consumer contracts. *supra* **Section II**.  As pled in the Complaint, violations of TCCWNA imposes mandatory liability against the Defendants for a civil penalty of not less than $100, plus attorney's fees and costs regardless of actual harm. N.J.S.A. 56:12-17. *See* ECF No. 1-3.

TCCWNA is a consumer protection statute aimed at deterring businesses from using contracts in consumer transactions that violate consumers' rights and business' responsibilities under New Jersey or Federal law. *See* Kent Motor Cars, Inc. v. Reynolds & Reynolds Co., 207 N.J. 428, 457 (2011)("[t]he purpose of the TCCWNA is to prevent deceptive practices in consumer contracts by prohibiting the use of illegal terms..."). TCCWNA "can be violated if a contract or notice simply contains a provision prohibited by state or federal law, and it *provides a remedy even if a plaintiff has not suffered any actual damages*". Barrows v. Chase Manhattan Mortg. Corp., 465 F.Supp.2d 347, 362 (D.N.J. 2006). TCCWNA provides, in relevant part, that

> No seller, lessor, creditor, lender or bailee shall in the course of his business offer to any consumer or prospective consumer or enter into any written consumer contract… which includes any provision that violates any clearly established legal

16

right of a consumer or responsibility of a seller... as established by State or Federal law at the time the offer is made or the consumer contract is signed....

N.J.S.A. 56:12-15.

Thus, "TCCWNA establishes liability whenever a seller offers a consumer a contract, the provisions of which violate any legal right of a consumer." Bosland v. Warnock Dodge, 396 N.J. Super. 267, 278 (App. Div. 2007) *aff'd*, 197 N.J. 543 *see also* United Consumer Financial Services Co. v. Carbo, 410 N.J. Super. 280, 306 (App.Div.2009) ("[T]he act of offering a consumer contract that violates a legal right of a consumer under the law is sufficient to establish a violation of [TCCWNA].")

To punish violators of TCCWNA and deter the use of the offending consumer contracts, the Legislature included a provision imposing a "civil penalty" of not less than $100, plus actual damages, if any, plus reasonable attorney's fees and costs. N.J.S.A. 56:12-17. In furtherance of its remedial purpose, TCCWNA expressly provides that its remedies are "in addition to and cumulative of any other right, remedy or prohibition accorded by common law, Federal law or statutes of this State." N.J.S.A. 56:12-18. Consistent with its plain language and legislative purpose, New Jersey courts have interpreted TCCWNA to provide a private right of action for a minimum $100 civil penalty whenever a business offers a contract that contains a provision that is contrary to any other New Jersey or federal law. Bosland, 396 N.J. Super. at 278 *aff'd*, 197 N.J. 543 ("TCCWNA establishes liability whenever a seller offers a consumer a contract, the provisions of which violate any legal right of a consumer."); *see also* Barrows *supra*, 465 F.Supp.2d at 362 ("[TCCWNA] can be violated if a contract or notice simply contains a provision prohibited by state or federal law, and it provides a remedy even if a plaintiff has not suffered any actual damages . . ..").

17

**B.    Plaintiffs have sufficiently pled TCCWNA claims based on N.J.S.A. 56:12-15 (prohibiting provisions in consumer contracts that violate New Jersey law)**

    **i.    TCCWNA violations predicated on violations of the HCSA and CFA in the Membership Agreements**

As alleged in the Complaint, Defendants' form Membership Agreement contains numerous violations of the Health Club Services Act and the Consumer Fraud Act.  These include:

- the HCSA at N.J.S.A. 56:8-42(b), by using Membership Agreements which fail to specifically set forth in a conspicuous manner on the first page of the Membership Agreements the buyer's total payment obligation for health club services to be received pursuant to the health service contracts;

- the HCSA at N.J.S.A. 56:8-41 and/or N.J.S.A. 56:8-42(b), by using Membership Agreements which fail to state that a bond, irrevocable letter of credit or securities, moneys or other security is filed or deposited with the Director of the Division of Consumer Affairs to protect customers who are damaged or suffer any loss by reason of breach of contract or bankruptcy;

- the CFA, by using Membership Agreements which violate the HCSA, which is an unlawful practice and a violation of the CFA pursuant to N.J.S.A. 56:8-46;

- the CFA at N.J.S.A. 56:8-2, in using an unconscionable commercial practice in Defendants' cancellation policies and/or billing practices because they impose unreasonable conditions for the sole purpose of discouraging and impeding cancellations of the perpetual monthly memberships, and thereby causing buyers to pay for unwanted services;

- the CFA at N.J.S.A. 56:8-2, in using an unconscionable commercial practice, deception, fraud and/or misrepresentation by failing to set forth the total payment obligation on first page of the Membership Agreements.

- The above violations of the HCSA also constitute *per se* violations of the CFA and unconscionable commercial practices in violation of the CFA at N.J.S.A. 56:8-2

18

Any one of these allegations of HCSA and/or CFA violations in the Membership Agreement, if proven true, would be sufficient to sustain the Plaintiffs' TCCWNA claims and defeat Defendants' motion to dismiss.  At this stage, all of the violations are sufficiently pled and set forth a claim upon which relief may be granted.

> ### ii. Defendants' argument that "ascertainable loss" is necessary to sustain TCCWNA claims predicated on CFA violations is contrary to the law.

Defendants' fail to grasp the distinction between a CFA *violation*, which is all that is required to sustain a TCCWNA claim (*see* Barrows, *supra*, 465 F.Supp.2d at 362 ("[TCCWNA] can be violated if a contract or notice simply contains a provision prohibited by state or federal law, and it provides a remedy even if a plaintiff has not suffered any actual damages . . .."), and the elements necessary to sustain a private action for treble damages under the CFA at N.J.S.A. 56:8-19. This distinction was described by the New Jersey Supreme Court as follows:

> As originally enacted, the Act was exclusively enforced by the Attorney General… In prosecuting an action under the Act, the Attorney General must prove that the Act has been violated, but does not have to prove that the victim of the fraudulent conduct had "in fact been misled, deceived or damaged thereby * * *." N.J.S.A. 56:8-2.
>
> In 1971, the Legislature amended the Act to permit a private right of action through which a successful plaintiff receives treble damages, reasonable attorneys' fees, filing fees, and costs. L.1971, c. 247, § 7, codified at N.J.S.A. 56:8-19…. Significantly, the 1971 amendment imposes a standard of proof in consumer fraud actions by private plaintiffs that is higher than the standard that applies to enforcement proceedings instituted by the Attorney General. While the Attorney General does not have to prove that the victim was damaged by the unlawful conduct, N.J.S.A. 56:8-2, a private plaintiff must show that he or she suffered an "ascertainable loss * * * as a result of" the unlawful conduct.

Meshinsky v. Nichols Yacht Sales, Inc., 110 N.J. at 472-473.

Focusing strictly on Plaintiffs' TCCWNA claims, the Plaintiffs are relying on the CFA *violations* only as predicate violations for their claims under N.J.S.A. 56:12-15, and so do not need to show "ascertainable loss" to sustain these claims.  *See* ECF No. 11-1, pp. 17-18.

Ascertainable loss is only necessary with respect to Plaintiff's claims brought directly under the CFA, at N.J.S.A. 56:8-19, for treble damages.

In fact, in <u>Shelton v. Restaurant.com Inc.,</u> 543 Fed. Appx. 168, 170 (3d Cir. N.J. 2013), the Third Circuit reversed the District Court's dismissal of TCCWNA claims predicated on violations of the CFA while at the same time sustaining the District Court's ruling that the plaintiffs had failed to plead ascertainable loss with respect to those same CFA violations. The Third Circuit thus dismissed the plaintiff's claims for treble damages under the CFA at N.J.S.A. 56:8-19, but sustained the plaintiff's claims for statutory penalties under TCCWNA at N.J.S.A. 56:12-17 <u>based on the very same CFA violations.</u> Therefore, Defendants' attempt to import an "ascertainable loss" requirement into TCCWNA claims based on CFA violations has already been rejected by the Third Circuit.

This is consistent with case law that permitted TCCWNA claims based on violations of statutes that themselves do not permit a private right of action.  For example, in <u>Carbo</u>, *supra*, 410 N.J. Super. 280, the New Jersey Appellate Division sustained TCCWNA claims based on violations of RISA, even though that statute does not provide for any private right of action. Similarly, in <u>McGarvey v. Penske Auto. Group</u>, 639 F. Supp. 2d 450, 457 (D.N.J. 2009) (reversed on other grounds at 486 Fed. Appx. 276, 279 (3d Cir. N.J. 2012)), the Court dismissed the plaintiff's claims under the Magnuson Moss Warranty Act (MMWA) because the plaintiffs failed to allege actual damage caused by MMWA violation as required by that statute (<u>Id.</u> at 457), but at the same time upheld the plaintiffs' claims under TCCWNA based on the same MMWA violations, explaining that:

> as a court in this District recently explained, "the NJTCC[WN]A can be violated if a contract or [warranty] simply contains a provision prohibited by state or federal law, and it provides a remedy even if a plaintiff has not suffered any actual damages." <u>Barrows v. Chase Manhattan Mortg. Corp.</u>, [supra] 465 F. Supp. 2d

[at] 362 []. If the Limited Warranty "contains a provision prohibited by [the MMWA]," id., therefore, Defendants may be held liable under the NJTCC[WN]A, even if Plaintiffs have not incurred actual damages.

McGarvey, *supra*, 639 F. Supp. 2d at 458.

It is thus, respectfully submitted, that Defendants' reliance on Wilson v Kia Motors America, Inc., 2015 WL 3903540 (D. N.J. 2015) is unpersuasive here.  *See* ECF No. 11-1,  p. 18. As an initial matter, Defendants fail to apprise this Court that, as of July 2, 2015, Wilson is currently on appeal before the United States Court of Appeals for the Third Circuit. Id.

Moreover, in Wilson, the plaintiff argued that two violations of New Jersey's Lemon Law violated TCCWNA, specifically the need to notify defendant via certified mail and the lack of a required disclosure pursuant to the Lemon Law. In granting the Wilson defendant's motion to dismiss, the court ruled that defendant merely "...clarified a preexisting requirement by requiring that Defendant be notified by certified mail of the problem." Id. at p. *3. In addition, the court concluded that the alleged violations were "ambiguously drawn" and therefore cannot be a 'clearly established right' to be a TCCWNA violation. This differs significantly from Plaintiff's case here. First, other New Jersey courts have previously determined that the CFA and HCSA violations alleged by Plaintiff violate TCCWNA, and therefore are not ambiguously drawn. *Infra* **Section IV**; *see also* **Exhibit A**; **Exhibit B**; **Exhibit C**. Second, Defendants' CFA and HCSA violations here are not clarifications of a preexisting requirement (as in Wilson). *Supra* **Section II**.

### IV. The *Ardino* and *McCarthy* Decisions Should Be Dispositive As to Whether Plaintiff Properly Stated a Claim

In Ardino and McCarthy, the plaintiffs brought claims against their respective health club alleging similar violations of the HCSA, CFA and TCCWNA here. *See* **Exhibit A; Exhibit B; Exhibit C**. Specifically, in addition to other claims not alleged here, the Ardino and McCarthy

21

<u>Id</u>.

Several months ago, on May 14, 2015, Judge Vincent LeBlon denied motions to dismiss based on claims by those plaintiffs similar to Plaintiff here. The <u>Ardino</u> plaintiffs also made claims against a New Jersey health club based on violations of the CFA, HCSA and TCCWNA. *See* **Exhibit A**; **Exhibit B**. Notably, the <u>Ardino</u> plaintiffs also alleged that defendant health club's contracts also failed to state the New Jersey consumer's total payment obligation as well as failed to state that a bond was on file with Division of Consumer Affairs as well as corresponding claims under TCCWNA. <u>Id</u>.

The <u>Ardino</u> defendants subsequently moved for reconsideration of Judge Leblon's denial of their motion to dismiss, which was also denied. *See* **Exhibit B**. In doing so, the court wrote the following as to the <u>Ardino</u> plaintiff's HCSA claims:

> "Defendants argue that Defendant Membership Agreements detail the 'full' and 'complete' payment obligations of each Plaintiff. Defendant cites to <u>N.J.S.A.</u> 56:8-42(b) which reqires a health club service contract to disclose a member's 'total payment obligation.'
>
> ***The Court notes that the...Agreement, while it does leave room for 'Monthly Dues' amount, does not include a final total of what the member owes...Thus, there is a discrepancy as to whether this contract is in compliance with N.J.S.A. 56:8-42(b).*** The disclosure of the total amount is not nearly as clear and conspicous as Defendants portray and may violate the requirements of the statute. " (emphasis added)

*See* **Exhibit B**, p. 5.

Similarly, in an unrelated case against a New Jersey health club, in a different county than in <u>Ardino</u>, on June 9, 2015, Judge Thomas J. Walsh also denied a motion to dismiss

*McCarthy* case. *See* **Exhibit C**. Similar to the <u>Ardino</u> case as well as the case at bar, the <u>McCarthy</u> plaintiffs alleged that the health club's contract failed to state the consumer's total payment obligation as well as failed to state that a bond was on file with the Division of Consumer Affairs. <u>Id</u>. In denying the motion to dismiss, Judge Walsh wrote:

> "...it is clear that under N.J.S.A. 56:8-42(b) Defendant is required to provide in a conspicuous manner on the first page of the contract Plaintiffs' total payment obligation for its health club services. ***What is far from clear, however, is whether the conspicuous listing of Plaintiffs' total payment oblgiation requires Defendant to list the total annual cost of a membership...or if listing monthly charges is sufficient...***"

*See* **Exhibit C**, p. 5-6.

Furthermore, and as specifically addressing the <u>McCarthy</u> plaintiffs' TCCWNA claims (based on HCSA and CFA violations), the court wrote: "...as Plaintiffs have sufficiently alleged causes of action under the Health Club Services Act, and the Consumer Fraud Act, Plaintiffs have sufficiently alleged that Defendant violated clearly established rights of the Plaintiffs pursuant to N.J.S.A. 56:12-15. *See* **Exhibit C**, p. 12.

**V**.     **Defendants' Motion to Strike the Class Action Allegations Should Be Denied as Premature**

Motions to strike class action allegations prior to discovery are granted only "in those ***rare cases*** where the complaint itself demonstrates that the requirements for maintaining a class action ***cannot*** be met." <u>Clark v. McDonald's Corp.</u>, 213 F.R.D. 198, 205 (D.N.J. 2003). *See also* <u>Landsman & Funk PC v. Skinder-Strauss Assocs.</u>, 640 F.3d 72, 93 n.30 (3d Cir. 2011) (holding that it is premature for a district court to decide class certification issues prior to discovery unless the "complaint itself demonstrates that the requirements for maintaining a class action cannot be

23

met.").

It is only when no amount of discovery or time will allow for plaintiffs to resolve deficiencies in class definitions under Rule 23, that a motion to strike class allegations should be granted. Pilgrim v. Universal Health Card, LLC, 660 F.3d 943, 949 (6th Cir. 2011). Otherwise, in order for a district court to engage in the "rigorous analysis" required to determine if certification is proper, an early motion to strike should be denied so that the court can "probe behind the pleadings before coming to rest on the certification question," after discovery has taken place. Id. (quoting Gen. Tel. Co. v. Falcon, 457 U.S. 147, 160, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982)).

Wilson v. Consolidated Rail Corp., 2014 U.S. Dist. LEXIS 48209, 15-16 (D.N.J. Apr. 8, 2014).

Defendants first challenge that Plaintiff's class action claims are a "superior" method for adjudicating this case under FRCP 23(b)(3). *See* ECF No. 11-1, pp. 19-22. However, Defendants case are inapplicable to the facts here. For example, Defendants rely on Szabo v Bridgeport Machines, Inc, 249 F. 3d 672 (7th Cir. 2001). *See* ECF No. 11-1, p. 20. Defendants suggest to this Court that Szabo is relevant because it states "...each buyer has a substantial claim, of the sort that could be, and often, is pursued, independently. " Id. A more complete review of the entire paragraph containing this quote from the Szabo decision reveals why it is irrelevant to the facts here:

"Szabo's proposed class is highly problematic, for reasons given in *Rhone–Poulenc Rorer* and sketched above. ***Nagging issues of choice of law, commonality, and manageability beset this case. It is unlikely that dealers in different parts of the country said the same things to hundreds of different buyers. (Szabo stresses that Bridgeport accepted each order at its home office, but this does not demonstrate that Bridgeport knew of or ratified any particular representation by any given dealer.) It is unlikely that other models of milling machines exhibit the same problems that Szabo says that the DX–32 unit has caused in his model.*** And it is unnecessary to certify a nationwide class. Each buyer has a substantial claim, of the sort that could be, and often, is, pursued independently. If any class treatment is appropriate, a class limited to a single state (or customers of a single dealer) would be more practical—though buyers in a single state (or of a single kind of machine) may be too few to justify class treatment..." (emphasis added).

*See* Szabo, 249 F.3d at 678.

24

Unlike Szabo,  it is alleged that the Plaintiff and putative class here received the same form contracts.  Here, there is no "choice of law" issue as it is alleged the violating actions occurred in New Jersey. Id at p. 678. Similarly, Defendants have not argued there is a "commonality" issue under Rule 23, and finally, there is no "manageability" problem in this case based on Plaintiff's Class and Subclass #1 definitions based on Defendants' form Membership Agreement. Id.

Defendants also rely on Ehren v Moon, Inc, 2010 WL 5014712 (S.D. Fla, Dec 3, 2010) for the premise that "Where a statute authorizes the recovery of attorneys' fees and punitive damages...the statutory scheme makes individual actions sufficiently feasible.  *See* ECF No. 11-1, p. 20. Notably, although Ehren is a Florida federal court decision, and not binding on the court here, another Florida federal court decision declined to follow Ehren as to "superiority" under FRCP 23. *See* Bush v Calloway Consolidated Group River City, Inc, 2012 WL 101 6871, *12. (March 26, 2012) ("...' "I agree that the class action is a superior method for resolving this controversy, due to the low damages incentive for individual litigation and the consistency of results encouraged by class actions'...").

Defendants then cite to Local Baking Prods. v Kosher Bagel Munch, Inc., 421 N.J. Super 268 (N.J.App Div. 2011) for the mistaken premise that it "...provides a good example of the application of these principles to a motion to strike" in the context of a 47 U.S.C. 227(1)(C) Telephone Consumer Protection Act (TCPA) case. *See* ECF No. 11-1, pp. 21-22. However, this New Jersey state case has not been followed on the "superiority" issue in several New Jersey federal decisions. *See*  A&L Industries, Inc. v P. Cippolini, 2013 WL 5503303, *pp. 4-5 (D. New Jersey October 2, 2013); City Select Auto Sales Inc.v David Randall Associates, Inc, 296 F.R.D. 299,311-312 (D. New Jersey 2013).

Next, Defendants challenge that Plaintiff's class claims can fulfill the "typicality" prong

of FRCP 23(a)(3). *See* ECF No. 11-1, pp. 22-23. This argument indicates a complete misunderstanding of the requirements for pleading violations of the CFA, HCSA and TCCWNA. *Supra* **Section II; Section III**. Whether, or not, Plaintiff cancelled or attempted to cancel his health club contract with Defendants is of no consequence in this type of case. The fact that Defendants' Membership Agreements contain misleading and confusing language as to its cancellation policies is what governs.  In any event, the Complaint specifically defines both the Class and Subclass #1.

In short, Defendants cannot demonstrate that class certification will be impossible based on the face of the Complaint, and therefore, its motion to strike must be denied. *See* <u>Clark</u>, *supra*, 213 F.R.D. at 226 (D.N.J. 2003)(pre-discovery motion to strike denied because it was not "impossible for a damage class to be certified" and there was not "some insurmountable impediment to the maintenance of plaintiff classes discernible from the face of the amended complaint.").

<u>**CONCLUSION**</u>

For the forgoing reasons, Plaintiff respectfully requests that the Court deny Defendants' motions in their entirety.

Dated: January 5, 2015
        Fairfield, New Jersey

Respectfully submitted,

*/s/ Joseph K. Jones*
Joseph K. Jones, Esq.
Law Offices of Joseph K. Jones, LLC
375 Passaic Avenue, Suite 100
Fairfield, New Jersey 07004
(973) 227-5900 telephone
(973) 244-0019 facsimile
jkj@legaljones.com

26

*/s/ Benjamin J. Wolf*
Benjamin J. Wolf, Esq.
Law Offices of Joseph K. Jones, LLC
375 Passaic Avenue, Suite 100
Fairfield, New Jersey 07004
(973) 227-5900 telephone
(973) 244-0019 facsimile
bwolf@legaljones.com

*Attorneys for Plaintiffs*

27