**\*\*NOT FOR PUBLICATION\*\***

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARNI TRUGLIO, individually and as a class representative on behalf of others similarly situated,<br><br>　　　　　　　　Plaintiff,<br><br>　v.<br><br>PLANET FITNESS, INC.; FIT TO BE TIED II, LLC d/b/a PLANET FITNESS; JOHN DOES 1-75; PLANET FITNESS FRANCHISES 1-75; AND XYZ CORPORATIONS 1-10,<br><br>　　　　　　　　Defendants. | Civil Action No. 15-7959 (FLW)(LHG)<br><br>**OPINION** |

**WOLFSON, United States District Judge**:

This matter comes before the Court on a Motion, pursuant to Federal Rule of Civil Procedure 12(b)(6), filed by Defendants Planet Fitness, Inc. ("Planet Fitness") and Fit To Be Tied II, LLC d/b/a Planet Fitness ("FTBT") (collectively "Defendants") seeking dismissal of the Amended Complaint filed by Plaintiff Marni Truglio ("Truglio" or "Plaintiff"), or, in the alternative, to strike the class action allegations of the Amended Complaint pursuant to Federal Rules of Civil Procedure 12(f) and 23(d)(1)(D). Plaintiff alleges that she entered into a health club services agreement with Defendants and that the agreement violated New Jersey law by (1) failing to state that a bond or other security was filed with the Director of the Division of Consumer Affairs (and that Defendants failed to maintain such bond of other security); (2) failing to conspicuously disclose Plaintiff's total payment obligation; (3) obligating Plaintiff to renew her contract; and (4) imposing misleading requirements to cancel her health club membership. Based

1

on those alleged unlawful practices, Plaintiff has asserted claims, individually and on behalf of a putative class, under the Health Club Services Act ("HCSA"), N.J.S.A. 56:8-39 to -48, and the Consumer Fraud Act ("CFA"), N.J.S.A. 56:8-1 to -195 (Count II); and the New Jersey Truth-in-Consumer Contract, Warranty and Notice Act ("TCCWNA"), N.J.S.A. 56:12-14 to -18 (Count I). Defendants move to dismiss the Amended Complaint, arguing that Plaintiff has failed to adequately allege that she suffered an ascertainable loss caused by the alleged unlawful practices and, therefore, has failed to state a claim under the HCSA, CFA, and TCCWNA.

For the following reasons, Defendants' Motion to dismiss is GRANTED in part and DENIED in part. Specifically, Count II of the Amended Complaint is dismissed without prejudice because Plaintiff has failed to allege (1) that Defendants engaged in an unlawful practice by obligating Plaintiff to renew her contract; and (2) that she suffered an ascertainable loss caused by Defendants' alleged (i) failure to maintain or state that a bond or other security was filed with the Director of the Division of Consumer Affairs, (ii) failure to conspicuously disclose Plaintiff's total payment obligation, or (iii) use of misleading cancellation provisions to force customers to pay for additional months of membership dues. Count I of the Amended Complaint is dismissed, in part, to the extent it is based upon omissions in the covered writing. The Court does not reach whether Count I of the Amended Complaint states a claim based upon Plaintiff's allegation that Defendants violated TCCWNA by including allegedly misleading cancellation provisions in the Membership Agreement.

The dismissal of these claims draws into question whether this Court has subject-matter jurisdiction under the Class Action Fairness Act of 2005 ("CAFA") over the remaining one TCCWNA claim (for statutory damages of $100 per class member) in Count I of the Amended Complaint. Specifically, the Court questions the number of potential plaintiffs in the class and

whether the aggregated claims will exceed $5 million dollars. Accordingly, the Court will not address whether a TCCWNA claim can be asserted in the absence of a viable underlying private cause of action under the CFA, or whether the class-action allegations of the Amended Complaint should be struck at this time. Instead, Defendants shall have twenty (20) days from the date of this opinion to show cause why this matter should not be remanded to state court based on a lack of subject-matter jurisdiction under CAFA.

I.      **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

The following facts are taken from the Amended Complaint. Truglio is a resident of Monmouth County, New Jersey. Am. Comp. ¶ 8. Planet Fitness, a Delaware corporation with its principal place of business located in Newington, New Hampshire, sells "Planet Fitness health club franchises." *Id.* at ¶¶ 9, 19. FTBT owns and operates a Planet Fitness club franchise located in Brick, New Jersey. *Id.* at ¶¶ 13, 31. Plaintiff alleges that each Planet Fitness franchise was required to "strictly follow the policies and procedures" set forth by Planet Fitness, including using the form documents at issue in this matter. *Id.* at ¶¶ 24, 26, 28.

On or about December 30, 2014, Truglio "visited the Planet Fitness health club website located at www.planetfitness.com to enroll in a health club membership." *Id.* at ¶ 32. Truglio alleges that Defendants provided her with a "Membership Agreement," *id.*, Ex. A., which Truglio "used to enroll in a health club membership with [Defendants]." *Id.* at ¶ 33. On its first page, the Membership Agreement provided, in relevant part:

Membership Fees:

**START-UP** $0.00 **FIRST MONTH PRORATE** $11.33 **ANNUAL PRORATE FEE** $0.00 **PREPAY** $0.00 **TOTAL** $11.33

- Your account will be billed on or around the 17th of each month beginning on 1/17/2015 for $19.99 per month until you cancel in accordance with this agreement. This membership has a 12 month minimum term.

3

> . . . .
>
> - An Annual Membership Fee of $39.00 will be billed each year of your monthly membership, on or around he first day of February, to the account on file.
>
> - In order to cancel the billing of this annual fee, the club requires written notice and cancellation of your membership on or before the 25th of the previous month.
>
> - To cancel your monthly membership and stop the monthly billing on the 17th of the month, the club requires written notification by the 10th of the month delivered to the club in person or preferably via certified mail.  Any monthly membership can be cancelled upon 30 days written notice.
>
> - If your monthly membership has a minimum commitment, and you wish to cancel your membership early, a $58 Buy Out fee is required with your cancellation.

*Id.*, Ex. A at 1; *see also id.* at ¶¶ 35, 36, 42.   Plaintiff accurately alleges that "[t]he Membership Agreement does not state that a bond, irrevocable letter of credit or securities, moneys, or other security is filed or deposited with the Director of the Division of Consumer Affairs to protect customers who are damaged or suffer any loss by reason of breach of contract or bankruptcy."  *Id.* at ¶ 41; *see* Ex. A.

Plaintiff seeks to represent a class and a sub-class.  The "CLASS" is defined by Plaintiff as:

> All persons who, at any time on or after the day six (6) years prior to the day on the original Complaint was filed, enrolled in a health club membership at and/or for use at any Planet Fitness health club located in New Jersey, where the Membership Agreement used to enroll that person contained terms the same or similar to the Membership Agreement used in the transactions with the named Plaintiff.

*Id.* at ¶ 44.  The "SUB-CLASS #1" is defined by Plaintiff as:  "All members of the Class who cancelled or attempted to cancel their Membership Agreement, and who were charged additional monthly payments after the cancellation date."  *Id.*  Importantly, Plaintiff does not allege that she cancelled, or attempted to cancel, her Membership Agreement.

4

On September 28, 2015, Plaintiff filed suit against Defendants in the Superior Court of New Jersey, Monmouth County, Law Division, under docket No. MON-L-3596-15. On October 19, 2015, Plaintiff filed the Amended Complaint, asserting claims individually and on behalf of a putative class, under (1) the HCSA and the CFA, and (2) the TCCWNA. Plaintiff served Planet Fitness with the Amended Complaint on November 4, 2015. On November 6, 2015, Planet Fitness timely removed this matter pursuant to the CAFA, 28 U.S.C. §§ 1332(d), 1453. On December 4, 2015, Planet Fitness filed the instant motion, which FTBT joined, seeking dismissal of the Amended Complaint or, in the alternative, requesting that the class action allegations of the Amended Complaint be struck.

## II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a claim "for failure to state a claim upon which relief can be granted." When reviewing a motion to dismiss, courts must first separate the factual and legal elements of the claims, and accept all of the well-pleaded facts as true. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). All reasonable inferences must be made in the plaintiff's favor. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010). In order to survive a motion to dismiss, the plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This standard requires the plaintiff to show "more than a sheer possibility that a defendant has acted unlawfully," but does not create as high of a standard as to be a "probability requirement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Third Circuit requires a three-step analysis to meet the plausibility standard mandated by *Twombly* and *Iqbal*. First, the court should "outline the elements a plaintiff must plead to a state a claim for relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). Next, the court should

5

"peel away" legal conclusions that are not entitled to the assumption of truth.  *Id.*; *see also Iqbal*, 556 U.S. at 678-79 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").  It is well-established that a proper complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted).  Finally, the court should assume the veracity of all well-pled factual allegations, and then "determine whether they plausibly give rise to an entitlement to relief."  *Bistrian*, 696 F.3d at 365 (quoting Iqbal, 556 U.S. at 679).  A claim is facially plausible when there is sufficient factual content to draw a "reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  The third step of the analysis is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.

"Generally, a court considering a motion to dismiss under Rule 12(b)(6) may consider only the allegations contained in the pleading to determine its sufficiency."  *Santomenno ex rel. John Hancock Trust v. John Hancock Life Ins. Co. (U.S.A.)*, 768 F.3d 284, 290 (3d Cir. 2014), *cert. denied*, __ U.S. __, 135 S. Ct. 1860 (2015).  However, a court may also consider the following without converting the motion to dismiss into one for summary judgment:  (1) "documents which are attached to or submitted with the complaint," (2) "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading," and (3) "[d]ocuments that the defendant attaches to the motion to dismiss . . . if they are referred to in the plaintiff's complaint and are central to the claim."  *Id.* at 290-91 (citations and internal quotation marks omitted); *see also Angstadt v. Midd-West Sch. Dist.*, 377 F.3d 338, 342 (3d Cir. 2004); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

### III. DISCUSSION

    **A.**     **Motion to Dismiss**

Plaintiff alleges that she entered into a gym membership contract which contained terms that violated the HCSA, CFA, and TCCWNA by (1) failing to state that a bond or other security was filed with the Director of the Division of Consumer Affairs (and failing to, in fact, maintain such bond or other security); (2) failing to conspicuously disclose Plaintiff's total payment obligation; (3) obligating their customers to renew their contracts; and (4) using misleading cancellation provisions to force customers to pay for additional months of membership dues. As discussed in more detail below, Plaintiff has failed to sufficiently allege the elements of a *prima facie* case under the CFA and, therefore, Count II of the Amended Complaint is dismissed without prejudice. Count I of the Amended Complaint is dismissed insofar as it is based on omissions of alleged required terms, and the Court will reserve on the question of whether a TCCWNA claim can proceed on the basis of an unlawful practice under the CFA, but in the absence of a showing of ascertainable loss, until Defendants show that subject-matter jurisdiction is still proper under CAFA.

### i. HCSA and CFA (Count II)

As a preliminary matter, this Court notes that while the HCSA has not yet been addressed in a published federal or state decision, its place in the context of the CFA is clear. The HCSA is one of several expansions to the CFA made by New Jersey's Legislature, which were added "to address particular areas of concern and to include them specifically within [the CFA's] protective sweep." *Czar, Inc. v. Heath*, 198 N.J. 195, 201 (2009) (citing N.J.S.A. 56:8-26 to -38 (regulating resale of tickets to "places of entertainment"); N.J.S.A. 56:8-39 to -48 (regulating health club contracts); N.J.S.A. 56:8-61 to -66 ("preventing consumer fraud in the preparation, distribution and sale of food as kosher")). A violation of any of these expansion sections of the CFA is considered an "unlawful practice" under the CFA. *See* N.J.S.A. 56:8-46 ("It is an unlawful practice

7

and a violation of [the CFA] to violate the provisions of this act."); *see Murnane v. Finch Landscaping, LLC*, 420 N.J. Super. 331, 336-37 (App. Div.) (analyzing claim under the Contractor's Registration Act, N.J.S.A. 56:8-136 to -152), *certif. denied*, 208 N.J. 600 (2011); *see also Napolitano v. Haven Homes Inc.*, No. 10-1712, 2012 U.S. Dist. LEXIS 9383, *27, 32 (D.N.J. Jan. 26, 2012). Importantly, the HCSA is a *supplement to*, not a *substitute for*, the CFA. *See L.* 1987, *c.* 238; *see also Real v. Radir Wheels, Inc.*, 198 N.J. 511, 525-26 (2009) (examining Used Car Lemon Law as a supplement to the CFA). Accordingly, although it is somewhat redundant to assert that a violation of the HCSA is also a violation of the CFA, conversely, finding that a term does not violate the HCSA does not foreclose the possibility that that same term may constitute a violation of the CFA.

"A CFA plaintiff must prove three elements for a successful claim: (1) unlawful conduct by defendant, (2) ascertainable loss, and (3) a causal relationship between the unlawful conduct and the ascertainable loss." *Ciser v. Nestle Waters North Am., Inc.*, 596 F. App'x. 157, 160 (3d Cir. 2015) (citing *Zaman v. Felton*, 219 N.J. 199, 222 (2014)). Where a plaintiff asserts claims under the CFA based on affirmative misrepresentation or material omissions, *i.e.*, claims sounding in fraud, those claims must meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b).[1] *See Frederico v. Home Depot*, 507 F.3d 188, 202-03 (3d Cir. 2007); *Lieberson v. Johnson & Johnson Consumer Companies, Inc.*, 865 F. Supp. 2d 529, 538 (D.N.J. 2011). Under Rule 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."

      a.    **Unlawful Practice under the HCSA and CFA**

---

[1] "Some claims under the CFA may not require pleadings complying with Rule 9(b). Not every such claim involves an affirmative misrepresentation or material omission." *Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 98 n.9 (D.N.J. 2011).

An "unlawful practice" under the CFA is "any unconscionable commercial practice, deception, fraud, false pretense, false promise, [or] misrepresentation . . . in connection with the sale or advertisement of any merchandise." N.J.S.A. 56:8-2. And, as discussed above, a violation of the HCSA constitutes an unlawful practice under the CFA as well. N.J.S.A. 56:8-46.

Notably, Defendants focus exclusively on their argument that Plaintiff has failed to sufficiently allege an ascertainable loss. Accordingly, the Court will assume – without deciding – that for the purposes of this motion, Plaintiff's allegations that she entered into a health club services contract which (1) failed to state that a bond or other security was filed with the Director of the Division of Consumer Affairs (and failed to, in fact, maintain such bond or other security),[2] Am. Compl. ¶¶ 63(c), 80-82; (2) failed to conspicuously disclose Plaintiff's total payment obligation, *id.* at ¶¶ 63(b), (f), 66, 77; and (3) used misleading cancellation provisions to force customers to pay for additional months of membership dues, *id.* at ¶¶ 63(e), 84, sufficiently alleged that Defendants committed unlawful practices in violation of the HCSA and/or the CFA.

However, since the analysis of a private claim under the HCSA and CFA requires the Court to determine whether an ascertainable loss was caused by an unlawful practice, this Court cannot merely credit Plaintiff's bald allegation that the Membership Agreement obligated her to renew

---

[2] Defendants argue they are not subject to the bond requirement in N.J.S.A. 56:8-41(a) because the Membership Agreement is a month-to-month contract which could be cancelled at any time, and therefore, they are not subject to the notice requirement contained in N.J.S.A. 56:8-42(c). N.J.S.A. 56:8-41(b) exempts health clubs from the bond requirement, provided they offer contracts "in which the buyer of the health club services purchases or becomes obligated to purchase health club services to be rendered over a period no longer than three months and in which the seller of the health club services requires or collects no more than three months' payment in advance." However, while Plaintiff could cancel the Membership Agreement at any time and payments were charged on a monthly basis, the Membership Agreement also plainly sets forth that it is for a "12 month minimum term," Am. Compl. Ex. A at 1, and, therefore, Plaintiff has adequately alleged that Defendants are subject to the bond requirement in N.J.S.A. 56:8-41(a) and the notice requirement contained in N.J.S.A. 56:8-42(c).

her contract, *id.* at ¶¶ 63(a), 85, even though Defendants have not challenged this deficiency in the pleadings.  *See KBZ Communs. Inc. v. CBE Techs. LLC*, 634 F. App'x. 908, 910 (3d Cir. 2015) ("[A] a court need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss.") (quoting *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)).

The HCSA provides that "[a] health club services contract shall not obligate the buyer to renew the contract."  N.J.S.A. 56:8-42(i).  Importantly, Plaintiff does not – and cannot – allege that the Membership Agreement *expressly* obligated her to renew her contract.  Indeed, the Membership Agreement includes a boilerplate provision, lifted from the HCSA, informing members that it is prohibited from obligating them to renew their contracts.  *See* Am. Compl. Ex. A at 5.  Instead, Plaintiff alleges that Defendants *effectively* obligated Plaintiff to renew her contract "by imposing unreasonable and unduly onerous requirements to cancel [her] health club membership[]."[3]  *Id.* at ¶ 85.  This Court is unpersuaded by Plaintiff's argument that, even assuming that the cancellation provisions set forth in the membership agreement were onerous, they are tantamount to an "obligation" to renew the agreement.   The HCSA is clear on this point: the Membership Agreement must, by its own terms, "obligate" the customer to renew in order to violate N.J.S.A. 56:8-42(i); Plaintiff cannot obfuscate this requirement by alleging that it was merely difficult to cancel the Membership Agreement.

---

[3] Although it is debatable whether the inclusion of an automatic renewal provision would violate N.J.S.A. 56:8-42(i), *see Ardino, et al. v. Retrofitness, LLC, et al.*, No. MID-L-362-14 at 7 (N.J. Super. Ct. May 14, 2015) (denying motion to dismiss and holding that plaintiff adequately alleged that a gym contract's automatic renewal program obligated customer to renew contract in violation of N.J.S.A. 56:8-42(i)), no such automatic renewal provision exists in the Membership Agreement.  Indeed, the Court further notes that competing bills have been introduced in the New Jersey Legislature to amend the HCSA to both expressly bar automatic renewal provisions, *see* Assembly Bill No. 4349, 214th Leg. (N.J. 2011), and expressly permit automatic renewal provisions, subject to notice requirements.  *See* Assembly Bill No. 1113, 217th Leg. (N.J. 2016); Assembly Bill No. 4034, 216th Leg. (N.J. 2014); Assembly Bill No. 3246, 215th Leg. (N.J. 2012).

Accordingly, Plaintiff has failed to adequately allege an unlawful practice in violation of the HCSA, N.J.S.A. 56:8-42(i).

### b. Ascertainable Loss and Causation

"The ascertainable loss and causation elements of a CFA claim are set forth in N.J.S.A. 56:8-19, which authorizes a statutory remedy for '[a]ny person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act.'" *D'Agostino v. Maldonado*, 216 N.J. 168, 184-85 (2013). "[T]he plain language of the Act unmistakably makes a claim of ascertainable loss a prerequisite for a private cause of action. An ascertainable loss under the CFA is one that is 'quantifiable or measurable,' not 'hypothetical or illusory.'" *Id.* at 185 (internal quotation marks and citations omitted); *see also Bosland v. Warnock Dodge, Inc.*, 197 N.J. 543, 558 (2009) (defining term "ascertainable loss" to "mean[] that plaintiff must suffer a definite, certain and measurable loss, rather than one that is merely theoretical.") (citing *Thiedemann v. Mercedes-Benz USA, LLC*, 183 N.J. 234, 248 (2005)).

The New Jersey Supreme Court has "not always equated an ascertainable loss with one that is demonstrated by an immediate, out-of-pocket expense suffered by the consumer." *Bosland*, 197 N.J. at 558-59 (citing *Thiedemann*, 183 N.J. at 248). In other words, "a plaintiff is not required to show monetary loss, but only that he purchased something and received less than what was promised." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 606 (3d Cir. 2012) (internal quotation marks and citations omitted).

"There are at least three recognized theories of ascertainable loss that may apply to a NJCFA claim." *Hammer v. Vital Pharms., Inc.*, No. 11-4124, 2012 U.S. Dist. LEXIS 40632, *22 (D.N.J. 2012).

11

> In cases involving product misrepresentation, either out-of-pocket loss or a demonstration of loss in value will suffice to meet the ascertainable loss hurdle . . . . The "out-of-pocket" theory may include the purchase price of a misrepresented product if the purchasers did not receive a refund and the seller's misrepresentations rendered the product essentially worthless. A "loss-in-value" theory is based on the quantifiable difference in value between the merchandise as [advertised] and the merchandise as delivered. Under the third theory, an 'ascertainable loss' can include a nominal overcharge for which the plaintiffs have not made a pre-suit demand for a refund.

*Id.* at *22-23 (internal quotation marks and citations omitted); *see also Mann v. TD Bank, N.A.*, No. 09-1062, 2010 U.S. Dist. LEXIS 112085, *17-18 (D.N.J. Oct. 20, 2010).

The out-of-pocket theory in not applicable to any of the unlawful practices alleged by Plaintiff. Plaintiff does not allege (or argue) that her gym membership was "essentially worthless" by virtue of the inclusion or omission of the alleged unlawful terms in her Membership Agreement. *See Mladenov v. Wegmans Food Mkts., Inc.*, 124 F. Supp. 3d 360, 375 (D.N.J. 2015) ("An out-of-pocket-loss theory will suffice only if the product received was essentially worthless."). Nor does Plaintiff allege she incurred a "nominal overcharge." Thus, the Court must examine Plaintiff's claims under the loss-in-value theory.

Under the loss-in-value theory, also known as the benefit-of-the-bargain theory, a plaintiff must allege that she was "misled into buying a product that is ultimately worth less than the product that was promised." *Id.* (citing *Smajlaj*, 782 F. Supp. 2d at 99).

> To present a benefit-of-the-bargain claim, a plaintiff must allege (1) a reasonable belief about the product induced by a misrepresentation; and (2) that the difference in value between the product promised and the one received can be reasonably quantified. There is no requirement that the product received actually is defective, but rather it simply must be something other than what was promised. Failure to quantify this difference in value results in the dismissal of a claim.

*Id.* (internal quotation marks and citations omitted).

12

Here, Plaintiff advances two separate bases in support of her argument that she has adequately alleged that she has sustained an ascertainable loss. However, neither of these bases can satisfy the "loss-in-value" theory (or other theories) of ascertainable loss.

First, Plaintiff argues that she has adequately alleged ascertainable loss with respect to the allegedly misleading cancellation provisions in the Membership Agreement based on her allegation that these provisions "result[] in many consumers being forced to pay for, at least, one additional month of membership at Defendants' health club after they cancel the contract." *Id.* at ¶ 84. Plaintiff argues that whether she or the class members "paid the extra fees that were demanded of them does not matter" because "[t]he Complaint refers to fees that were wrongfully charged, thus satisfying the ascertainable loss requirement of the CFA." Pl. Opp. Br. at 13-14.

However, while Defendant is correct that a plaintiff need not allege that she actually *paid* a debt that is incurred in violation of the CFA, she must still allege that she incurred the debt in the first place. For example, in *Cox v. Sears Roebuck & Co.*, 138 N.J. 2 (1994), the case on which Plaintiff principally relies, the New Jersey Supreme Court held that the plaintiff had adequately alleged an ascertainable loss even where a consumer had not paid for home improvement repairs caused by a contractor's failure to comply with applicable regulations requiring the work to be inspected. *Id.* at 22. The Court rejected the lower court's "suggestion" that "because Cox did not spend money to repair or finish the work, he incurred no loss," because "[t]raditionally, to demonstrate a loss, a victim must simply supply an estimate of damages, calculated within a reasonable degree of certainty. The victim is not required actually to spend the money for the repairs before becoming entitled to press a claim." *Id.* at 23 (citations omitted). In other words, the plaintiff clearly incurred a loss – in the form of the damaged property – that could be reasonably

quantified by the cost that would be required to repair the damaged property, even though the plaintiff had not paid those costs.

That is not the case here. Plaintiff has failed to allege that she incurred a wrongful debt or charge in the form of an additional month of dues, because Plaintiff has not alleged that she cancelled or attempted to cancel her Membership Agreement. Her claim is not that she *will* be obligated at some point to pay an extra month of dues, but that, in theory, she *could* be charged an extra month of dues under certain, hypothetical circumstances, *i.e.*, if she runs afoul of the cancellation policy and gives (or attempts to give) a cancellation notice after the 10th of the month. This loss is, by definition, a "hypothetical" loss.$^4$ This is to be distinguished from the case of *Martina v. LA Fitness Int'l, LLC*, No. 12-2063, 2012 U.S. Dist. LEXIS 125209 (D.N.J. Sept. 4, 2012), in which the court found that the plaintiff suffered an ascertainable loss in the form of an additional month of dues where she failed to cancel contract with 30 days notice, as required by the contract, and was also charged for the membership's last month of dues upfront, resulting in her being charged a hidden, two-month cancellation fee. *Id.* at *8.

---

$^4$ Further, this Court finds the unpublished state court decisions cited by Plaintiff, which Plaintiff concedes are not binding authority, are not persuasive. In *Ardino*, the court held that the plaintiffs had adequately alleged an ascertainable loss caused by unconscionable cancellation policies in a gym contract because they alleged one of the named plaintiffs was charged an extra membership fee of $29 after he mailed his cancellation notice. No. MID-L-362-14 at 4, 7. In *McCarthy, et al. v. Equinox Holdings, Inc.*, No. UNN-L-0789-15 (N.J. Super. Ct. June 9, 2015), the plaintiffs alleged that the gym contract at issue required the plaintiffs to commit to a 12-month term, and required 45 days notice to cancel. The plaintiffs argued that "if a [p]laintiff attempted to cancel a contract on the last day of the 12th month, [they] would be forced to pay for an extra 45 days." *Id.* at 3. The court held that Plaintiff had adequately alleged ascertainable loss "in the amount of all monthly dues collected by Defendants." *Id.* at 8. This Court disagrees with that court's analysis in *McCarthy* – it is not enough for a plaintiff to theorize that she might be subject to an unfair cancellation policy in the event that she attempted to cancel her membership when less than 45 days remained. Nor, for that matter, does this Court agree that if such a loss were alleged, the measure of the ascertainable loss caused by the unlawful practice would be "all monthly dues collected," rather than merely the monthly dues collected after the 12-month term expired.

14

Nor is it appropriate for this Court to consider whether *other members* of the putative class or sub-class have suffered an ascertainable loss.  No class has been certified in this matter, and Plaintiff must be able to satisfy the elements of her own claim in order to represent the proposed classes.  *See Monaco v. Mitsubishi Motors Credit of Am., Inc.*, 34 F. App'x. 43, 45 (3d Cir. 2002) ("It is well settled that 'to be a class representative on a particular claim, the plaintiff himself must have a cause of action on that claim.'") (quoting *Zimmerman v. HBO Affiliate Grp.*, 834 F.2d 1163, 1169 (3d Cir. 1987)); *see also Kauffman v. The Dreyfus fund, Inc.*, 434 F.2d 727, 734 (3d Cir. 1970) ("[A] predicate to [a plaintiff's] . . . right to represent a class is his eligibility to sue in his own right.  What he may not achieve himself, he may not accomplish as a representative of a class . . .").

Second, Plaintiff argues that her ascertainable loss is "the entire amount paid under the contract" is the measure of damages because "the consumer fraud occurred in the actual contract or at the time of contracting."  Pl. Opp. Br. at 14.  This argument fails because the Amended Complaint is silent as to how the mere offering of the Membership Agreement, containing allegedly unlawful terms and omissions, such as (1) failing to maintain or set forth that a bond or other security was filed in the Membership Agreement, (2) conspicuously set forth members' total payment obligations in the Membership Agreement, or (3) the inclusion of the allegedly misleading cancellation provisions,[5] *caused* Plaintiff to suffer any ascertainable loss.  Plaintiff does not allege that she paid more than she bargained for, or that she missed out on an opportunity to make a claim against the bond required by N.J.S.A. 56:8-41(a) because she did not receive proper

---

[5] As discussed above, Plaintiff has failed to allege unlawful conduct with respect to her argument that the Membership Agreement obligated her to renew her contract and, therefore, the Court will not address whether Plaintiff has sufficiently alleged an ascertainable loss with respect to this claim.

15

notice of it.  The mere offering of a contract with allegedly illegal terms is not, in and of itself, an ascertainable loss under the CFA.  Stated differently, Plaintiff fails to plausibly allege that there is a difference in value between the gym membership promised under the HCSA and CFA, and the one received, with these allegedly unlawful terms and omissions, or that such difference can be reasonably quantified.  Therefore, Plaintiff has failed to adequately allege that she suffered an ascertainable loss.

Accordingly, Count II of the Amended Complaint is dismissed without prejudice.

### ii. **TCCWNA (Count I)**

In addition to asserting that the above unlawful practices constitute violations of the HCSA and CFA, Plaintiff also asserts that these unlawful practices constitute violations of the TCCWNA. Section 15 of the TCCWNA provides, in relevant part, that:

> No seller, lessor, creditor, lender or bailee shall in the course of his business offer to any consumer or prospective consumer or enter into any written consumer contract or give or display any written consumer warranty, notice or sign after the effective date of this act which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee as established by State or Federal law at the time the offer is made or the consumer contract is signed or the warranty, notice or sign is given or displayed.

N.J.S.A. 56:12-15. This provision "establishes liability whenever a seller offers a consumer a contract, the provisions of which violate any legal right of a consumer." *Bosland v. Warnock Dodge, Inc.*, 396 N.J. Super. 267, 278 (App. Div. 2007), *aff'd on other grounds*, 197 N.J. 543 (2009).  The TCCWNA "does not establish rights or seller responsibilities," itself, but "[r]ather, the statute bolsters rights and responsibilities established by other laws." *Watkins v. DineEquity, Inc.*, 591 F. App'x. 132, 135 (3d Cir. 2014).

To state a claim under Section 15 of the TCCWNA, a plaintiff must allege each of four elements: (1) the plaintiff is a consumer; (2) the defendant is a seller, lessor, creditor, lender or

16

bailee; (3) the defendant offers the plaintiff a contract or gives or displays any written notice or sign; and (4) the contract, notice, or sign includes a provision that violates any legal right of a consumer or responsibility of the seller, lessor, creditor, lender or bailee. *Id.* at 135 (quoting *Bosland*, 396 N.J. Super. at 278). Here, there is no dispute that Plaintiff is a consumer, Defendants are sellers, or that the Membership Agreement Defendants offered to Plaintiff qualifies as a consumer contract. Instead, the parties dispute whether Plaintiff has adequately alleged that the Membership Agreement contained provisions which violated clearly established legal rights of consumers or responsibilities of sellers.

The Third Circuit has held that, absent a contrary interpretation from the New Jersey Supreme Court, since Section 15 of the TCCWNA prohibits the offering of a consumer contract which "*includes* any provision that violates any clearly established legal right of a consumer," N.J.S.A. 56:12-15 (emphasis added), the "mere omission" of required terms in a consumer contract (or other covered writing) does not result in liability under the TCCWNA. *Watkins*, 591 F. App'x. 132, 136-37. Accordingly, Plaintiff's claim that Defendants violated the TCCWNA because the Membership Agreement failed to (1) conspicuously set forth her total payment obligation, or (2) set forth that a bond had been filed with the Director of the Division of Consumer Affairs – in other words, that the Membership *omitted* terms that are required by law – cannot serve as the basis for a TCCWNA violation.[6] Nor can Plaintiff's claim that the Membership Agreement obligated her to renew her contract, in violation of the HCSA, support a TCCWNA claim because, as discussed above, Plaintiff has failed to adequately allege that the Membership Agreement included such a provision.

---

[6] Plaintiff has not alleged a separate TCCWNA claim with respect to Defendants' alleged failure to maintain a bond or other security, as required by N.J.S.A. 56:8-41(a).

17

Whether Plaintiff can maintain a TCCWNA claim based on the alleged unlawful practice of including misleading cancellation provisions, without being able to allege an ascertainable loss, is less clear.[7] However, the Court will not reach the merits of this question at this juncture, because, as discussed below, I question whether the Court has subject-matter jurisdiction over this matter in the wake of my dismissal of all but one of Plaintiff's claims. Accordingly, Count I of the Amended Complaint is dismissed to the extent it is based on alleged violations of N.J.S.A. 56:8-41(a), -42(b), (c), and (i). The Court will not address whether Count I of the Amended Complaint, to the extent it alleges Defendants violated TCCWNA by offering Plaintiff the Membership Agreement which included cancellation provisions which violated consumer rights under the CFA, N.J.S.A. 56:8-2, states a claim.

B.     **Subject Matter Jurisdiction.**

Under CAFA, federal district courts have original jurisdiction over class actions where (1) the matter in controversy (i.e., the aggregated claims of the individual class members) exceeds the sum or value of $5,000,000, exclusive of interest and costs, (2) any member of a class of plaintiffs is a citizen of a state different from any defendant, and (3) the class has at least 100 members. 28 U.S.C. § 1332(d)(2)(A), (d)(5)(B), (d)(6); *Standard Fire Ins. Co. v. Knowles*, __ U.S. __, 133 S. Ct. 1345, 1348 (2013); *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 358 (3d Cir. 2015). "A

---

[7] Indeed, there appears to be a lack of binding precedent as to whether a TCCWNA claim can be based upon an unlawful practice in violation of the CFA, but for which no ascertainable loss occurred; the only analysis of this issue exists in the form of conflicting, non-binding authorities. *Compare Watkins*, 591 F. App'x. at 141 (Greenaway, Jr., J., dissenting) (opining that New Jersey courts would likely permit TCCWNA claim to proceed even where the underlying CFA violation could not support a private cause of action based on a lack of ascertainable loss), *with Wilson v. Kia Motors Am., Inc.*, No. 13-1069, 2015 U.S. Dist. LEXIS 82332, *12 (D.N.J. June 25, 2015) ("Plaintiff here pleads no such [ascertainable] loss and her [CFA] claim fails as a matter of law. As a result, Plaintiff cannot establish a violation of a 'clearly established legal right' under the CFA and therefore cannot, by proxy, establish a violation of the TCCWNA."), *appeal dismissed*, No. 15-2626 (3rd Cir. Nov. 18, 2015).

18

party asserting federal jurisdiction in a removal case bears the burden of showing 'that the case is properly before the federal court.'" *Judon v. Travelers Prop. Cas. Co. of Am.*, 773 F.3d 495, 500 (3d Cir. 2014) (quoting *Frederico*, 507 F.3d at 193); *see also Morgan v. Gay*, 471 F.3d 469, 473 (3rd Cir. 2006), *cert. denied*, 552 U.S. 940 (2007). Any doubts must be resolved in favor of remand. *Samuel-Bassett v. Kia Motors Am.*, 357 F.3d 392, 403 (3rd Cir. 2004).

"[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, __U.S. __, 135 S. Ct. 547, 554 (2014). "Thus, the grounds for removal should be made in 'a short plain statement,' just as required of pleadings under Fed. R. Civ. P. 8(a)." *Grace v. T.G.I. Fridays, Inc.*, No. 14-7233, 2015 U.S. Dist. LEXIS 97408, at *8-9 (D.N.J. July 27, 2015) (citing Dart Cherokee, 135 S. Ct. at 553). No evidentiary support is required, and the Court should accept a defendant's allegations unless they are contested by the plaintiff or questioned by the Court. *See Dart Cherokee*, 135 S. Ct. at 553. When the sufficiency of the jurisdictional allegations in a notice of removal is challenged, the parties must submit proofs for the court to decide, by a preponderance of the evidence, whether the jurisdictional requirements are satisfied. *See id.* at 554.

Defendants removed this matter from state court, pursuant to CAFA, based on their representation that the Amended Complaint asserts six claims under the HCSA and CFA, potentially representing $600 of statutory damages per class member under TCCWNA. Notice of Removal ¶ 49(a). Thus, Defendants represented that a class of 8,334 persons, each potentially receiving $600 in statutory damages, would exceed CAFA's $5 million threshold, and that the amount of people enrolled in Membership Agreements in New Jersey during the putative six-year class period "far exceeds the above threshold figure of 8,334 persons." *Id.* at ¶ 49(b), (c). However, in light of the fact that only Plaintiff's TCCWNA claim with respect to her claim that

19

the Membership Agreement's cancellation provisions violated the CFA remains, which would result in a $100 statutory remedy per class member, it is unclear whether Defendants' basis for removal remains valid.

Accordingly, Defendants shall have twenty (20) days from the date of this opinion to show cause why this matter should not be remanded to state court based on a lack of subject-matter jurisdiction under CAFA.

## IV.     CONCLUSION

For the foregoing reasons, Defendants' Motion to dismiss is GRANTED in part and DENIED in part.  Count II of the Amended Complaint is dismissed without prejudice.  Count I of the Amended Complaint is dismissed, in part, to the extent it is based upon omissions in the covered writing.  The Court does not reach whether Count I of the Amended Complaint states a claim based upon Plaintiff's allegation that Defendants violated TCCWNA by including allegedly misleading cancellation provisions in the Membership Agreement and, therefore, will deny the motion to dismiss without prejudice on that basis, pending Defendants showing that subject-matter jurisdiction still exists under CAFA.  Defendants' motion to strike the class action allegations of the Amended Complaint is DENIED without prejudice at this time, as well.

Dated: July 28, 2016

/s/ The Honorable Freda L. Wolfson

United States District Judge