**FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                    :
MARNI TRUGLIO, individually and as a :
class representative on behalf of others :
similarly situated,                 :     Civil Action No. 15-7959 (FLW)
                                    :
                  Plaintiff,        :
                                    :
        v.                          :
                                    :     OPINION
PLANET FITNESS, INC.; FIT TO BE     :
TIED II, LLC d/b/a PLANET FITNESS;  :
JOHN DOES 1-75; PLANET FITNESS      :
FRANCHISES 1-75; AND XYZ            :
CORPORATIONS 1-10,                  :
                                    :
                  Defendants.       :
_____ :

**WOLFSON, United States District Judge**:

      Presently, Defendant Planet Fitness, Inc., joined by Defendant Fit To Be Tied II, LLC d/b/a Planet Fitness (collectively "Defendants"), move to dismiss the sole surviving claim in Plaintiff Marni Truglio's ("Plaintiff") Amended Complaint. Plaintiff commenced this action in 2015, bringing various claims centered on allegedly unlawful provisions in Defendants' health club membership contract. The Court previously dismissed Plaintiff's claims based on the Health Club Services Act ("HCSA"), N.J.S.A. 56:8-39 to 48, and the Consumer Fraud Act ("CFA"), N.J.S.A. 56:8-1 to 195, leaving only one claim under the Truth-in-Consumer Contract, Warranty and Notice Act ("TCCWNA"), N.J.S.A. 56:12-14 to 18. After the New Jersey Supreme Court, in *Spade v. Select Comfort Corp.* and *Wenger v. Bob's Discount Furniture, LLC*, 232 N.J. 504 (2018) ("*Spade-Wenger*"), issued a decision clarifying whether a plaintiff who had suffered no

1

"adverse consequences" could bring a TCCWNA claim, I ordered renewed briefing on whether Plaintiffs' TCCWNA claim could survive.

For the following reasons, I find that *Spade-Wenger* forecloses Plaintiffs' TCWNAA claim, Defendants' motion to dismiss is granted in its entirety, and the case is, therefore, dismissed.

I.  **FACTUAL BACKGROUND & PROCEDURAL HISTORY**

The Court incorporates the factual background and procedural history recounted in its previous Opinions issued on July 28, 2016 and March 31, 2017. In brief, Plaintiff sought to enroll in a health club membership in Defendants' organization, and Defendants provided her with a membership agreement. Am. Compl. at ¶ 33. Plaintiff executed the membership agreement, but contends that the agreement's terms violated New Jersey law by, as relevant to Plaintiff's remaining TCWNAA claim, imposing misleading requirements to cancel her health club membership. *Id.* at ¶ 42.

Specifically, Plaintiff alleges that Defendants extracted dues for one or more months beyond the Plaintiff's contracted-for membership periods by inserting the following provision into the membership agreement:

> To cancel your monthly membership and stop the monthly billing on the 17th of the month, the club requires written notification by the 10th of the month delivered to the club in person or preferably via certified mail. Any monthly membership can be cancelled upon 30 days written notice.

*Id.*, Ex. A at 1. According to Plaintiff, given that written notification of cancellation of the Membership Agreement by a consumer must be completed "by the 10th of the month" (to avoid the monthly charge on the 17th of each month) but also upon "thirty days notice," the written

notification must be actually completed upon thirty-seven days notice, forcing consumers to pay at least one additional month of membership fees after they cancel the contract. *Id.* The Amended complaint does not allege, however, that Plaintiff ever cancelled or attempted to cancel her membership.

On September 28, 2015, Plaintiff brought suit against Defendants in the Superior Court of New Jersey, Law Division. On October 19, 2015, Plaintiff filed an Amended Complaint, setting forth claims, individually and on behalf of a putative class, under the TCCWNA (Count I), as well as the HCSA and CFA (Count II). Defendants removed the action to this Court on November 6, 2015, and moved to dismiss on December 4, 2015. On July 28, 2016, this Court issued an opinion and order dismissing Count II, Plaintiff's CFA and HCSA claims, without prejudice, and dismissing Count I, Plaintiff's TCCWNA claim, with prejudice, to the extent that it was based on omissions in the membership agreement. *Truglio v. Planet Fitness, Inc.*, No. 15-7959, 2016 WL 4084030 (D.N.J. July 28, 2016) ("*Truglio I*"). After the Court's order and after the Court denied Plaintiff's motion for reconsideration, *Truglio v. Planet Fitness, Inc.*, No. 15-7959, 2017 WL 1197813 (D.N.J. Mar. 31, 2017) (*"Truglio II"*), the only surviving claim in the Amended Complaint was Plaintiff's Count I TCCWNA claim for statutory damages based upon the inclusions of the allegedly misleading cancellation provision in the membership agreement. Although this Court had already dismissed an identical claim under Count Two because the CFA prohibits damages claims where no ascertainable loss is alleged, I declined to reach that issue with respect to the TCCWNA claim because it found a "lack of binding precedent as to whether a TCCWNA claim can be based upon an unlawful practice in violation of the CFA, but for which no ascertainable loss occurred." *Truglio I*, 2016 WL 4084030 at *9 n.7. On April 9, 2018, this Court stayed and administratively terminated the matter pending the New Jersey Supreme

3

Court's decision in *Spade-Wenger*, which promised to fill the precedential gap by deciding whether a consumer who enters into an unlawful contract under the TCCWNA but suffers no "adverse consequences" can be an "aggrieved consumer" authorized to bring a TCCWNA damages claim. *Spade-Wenger*, 232 N.J at 509. After *Spade-Wenger* answered that question in the negative, Defendants renewed their motion to dismiss Plaintiff's remaining TCCWNA claim.

## II. STANDARD OF REVIEW

Under Fed. R. Civ. P. 12(b)(6), a complaint may be dismissed for "[f]ailure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quotations omitted). Under this standard, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

However, Rule 12(b)(6) only requires a "short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. The complaint must include "enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts

4

to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips*, 515 F.3d at 234 (citation and quotations omitted); *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) ("[A] claimant does not have to set out in detail the facts upon which he bases his claim. The pleading standard is not akin to a probability requirement; to survive a motion to dismiss, a complaint merely has to state a plausible claim for relief." (citation and quotations omitted)).

Under the current pleading regime, when a court considers a dismissal motion, three sequential steps must be taken: first, "it must take note of the elements the plaintiff must plead to state a claim." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quotations omitted). Next, the court "should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. (quotations omitted). Lastly, "when there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. (quotations and brackets omitted).

### III. ANALYSIS

The sole question before the Court on Defendants' motion to dismiss is whether Plaintiff can maintain a TCCWNA claim despite the apparent lack of any "adverse consequences." The remedial provision of TCCWNA authorizes the award of a civil penalty, damages, attorney's fees, and costs only to an "aggrieved consumer":

> Any person who violates the provisions of this act shall be liable to the aggrieved consumer for a civil penalty of not less than $100.00 or for actual damages, or both at the election of the consumer, together with reasonable attorney's fees and Court costs. This may be recoverable by the consumer in a civil action in a Court of competent jurisdiction or as part of a counterclaim by the consumer against the seller, lessor, creditor, lender or bailee or assignee of any of the

aforesaid, who aggrieved him. A consumer also shall have the right to petition the Court to terminate a contract which violates the provisions of section 2 of this act and the Court in its discretion may void the contract.

N.J.S.A. 56:12-17. A plaintiff pursuing a TCCWNA cause of action must prove four elements: "first, that the defendant was a 'seller, lessor, creditor, lender or bailee or assignee of any of the aforesaid'; second, that the defendant offered or entered into a 'written consumer contract or [gave] or display[ed] any written consumer warranty, notice or sign'; third, that at the time that the written consumer contract is signed or the written consumer warranty, notice or sign is displayed, that writing contains a provision that 'violates any clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee' as established by State or Federal law; and finally, that the plaintiff is an 'aggrieved consumer.'" *Spade-Wenger*, 232 N.J. at 516 (quoting N.J.S.A. 56:12–15, -17).

At the time of *Truglio I*, it was unclear whether a consumer who alleged a violation of the TCCWNA but who suffered no ascertainable loss qualified as an "aggrieved consumer." As I explained in *Truglio I*:

> [T]here appears to be a lack of binding precedent as to whether a TCCWNA claim can be based upon an unlawful practice in violation of the CFA, but for which no ascertainable loss occurred; the only analysis of this issue exists in the form of conflicting, non-binding authorities. *Compare* [*Watkins v. DineEquity, Inc.*, 591 F. App'x 132, 141 (3d Cir. 2014)] (Greenaway, Jr., J., dissenting) (opining that New Jersey courts would likely permit TCCWNA claim to proceed even where the underlying CFA violation could not support a private cause of action based on a lack of ascertainable loss), *with Wilson v. Kia Motors Am., Inc.*, No. 13-1069, 2015 U.S. Dist. LEXIS 82332, *12 (D.N.J. June 25, 2015) ("Plaintiff here pleads no such [ascertainable] loss and her [CFA] claim fails as a matter of law. As a result, Plaintiff cannot establish a violation of a 'clearly established legal right' under the CFA and therefore cannot, by proxy, establish a violation of the TCCWNA."), *appeal dismissed*, No. 15-2626 (3rd Cir. Nov. 18, 2015.).

*Truglio I*, 2016 WL 4084030 at *9 n.7.

In *Spade-Wenger,* the New Jersey Supreme Court finally resolved this question. There, two sets of Plaintiffs, the Spades and the Wengers, purchased furniture from retail furniture stores. *Spade-Wenger*, 232 N.J. at 511-12. According to both sets of plaintiffs, the sales documents that they received contained language limiting or prohibiting their ability to make returns or obtain full refunds in the event of late delivery of furniture, in violation of N.J.A.C. 13:45A–5.3. *Id.* Despite these alleged statutory violations, neither set of plaintiffs asserted that they suffered economic harm or that the furniture was actually delivered late. *Id.* As such, the Court set out to answer two questions, only one of which is relevant to the present case: "Is a consumer who receives a contract that does not comply with the Furniture Delivery Regulations, but has not suffered any adverse consequences from the noncompliance, an 'aggrieved consumer' under the TCCWNA?" *Id.* at 509.

The Court began by noting that "the TCCWNA does not specifically define what makes a 'consumer' an 'aggrieved consumer' for purposes of N.J.S.A. 56:12–17." *Id.* at 520. As such, in order to divine the term's meaning, the Court looked to the plain language of the statute. *Id.* at 521. The Court observed that while only an "aggrieved consumer" can recover damages for a TCCWNA violation under the statute's remedial provision, the statute elsewhere uses the term "consumer or prospective consumer," unmodified by "aggrieved," in the section discussing prohibited conduct under the statute. *Id.* The Court reasoned that if the term "aggrieved consumer" in the remedial provision, meant nothing more than the word "consumer" or "prospective consumer" as defined elsewhere in the statute, the term "aggrieved" would be superfluous. *Id.* at 521-22." The Court thus found that the term "aggrieved" "distinguishes consumers who have suffered harm because of a violation of [the statute] from those who have merely been exposed to unlawful language in a contract or writing, to no effect." *Id.* at 522.

7

Thus, "a consumer who receives a contract that includes language prohibited by N.J.A.C. 13:45A–5.3(c), but who suffers no monetary or other harm as a result of that noncompliance, is not an 'aggrieved consumer' entitled to a remedy under the TCCWNA." *Id.* at 509. An aggrieved consumer, in contrast, must suffer some sort of harm or "adverse consequences" in order to assert a TCCWNA claim. *Id.* at 524.

In reaching this decision, the Court cautioned that while an "aggrieved consumer" must suffer some adverse consequences, there may be a case in which "a consumer may be entitled to a remedy notwithstanding the absence of proof of monetary damages." *Id.* at 523. The Court illustrated this by providing an example based on the facts of the case:

> If, for example, a furniture seller fails to timely deliver a consumer's furniture, and the consumer would have sought a refund had he or she not been deterred by the "no refunds" language prohibited by N.J.A.C. 13:45A–5.3, that consumer may be an "aggrieved consumer" entitled to a civil penalty under N.J.S.A. 56:12–17. If an untimely delivery and misleading "no refunds" language leave a consumer without furniture needed for a family gathering, the consumer may be an "aggrieved consumer" for purposes of N.J.S.A. 56:12–17.

*Id.* However, the Court concluded that if "a consumer has entered into a sales contract containing a provision that violated N.J.A.C. 13:45A–5.3, but his or her furniture was delivered conforming and on schedule, and he or she has incurred no monetary damages or adverse consequences, that consumer has suffered no harm," and is, therefore, "not an 'aggrieved consumer' under N.J.S.A. 56:12–17." *Id.*

Thus, the *Spade-Wenger* decision appears to dictate that Plaintiff, whose only alleged harm was entering into a gym membership contract containing an allegedly unlawful cancellation provision, is not an "aggrieved consumer" capable of obtaining relief under the

8

TCCWNA. It is, as an initial matter, undisputed that Plaintiff has not suffered any monetary harm, which is the reason that the Court dismissed Plaintiff's parallel CFA claim in *Truglio I*:

> Plaintiff has failed to allege that she incurred a wrongful debt or charge in the form of an additional month of dues, because Plaintiff has not alleged that she cancelled or attempted to cancel her Membership Agreement. Her claim is not that she *will* be obligated at some point to pay an extra month of dues, but that, in theory, she *could* be charged an extra month of dues under certain, hypothetical circumstances, *i.e.*, if she runs afoul of the cancellation policy and gives (or attempts to give) a cancellation notice after the 10th of the month. This loss is, by definition, a "hypothetical" loss.

*Truglio I*, 2016 WL 4084030, at *7. As Plaintiff has not renewed a monetary loss argument, and because her TCCWNA claim is premised on the same allegations as the CFA claim, this Court sees no reason why the monetary loss analysis should be different here.

Undeterred, Plaintiff offers two alternative arguments for why *Spade-Wenger* did not foreclose her TCCWNA claim. First, fixating on the fact that the decision left room for non-monetary-damage claims in certain contexts, Plaintiff contends that she suffered "adverse consequences," a phrase that, according to Plaintiff, includes "intangible harms, or informational injuries, such as a health club contract, like Defendants', that purports to be for only one year but contains a misleading cancellation policy that actually extends the New Jersey consumer's contract to more than one year." ECF No. 69 at 6. Yet this alleged harm is nothing like the examples highlighted in *Spade-Wenger* of non-monetary "adverse consequences" that might give rise to a TCCWNA claim. The compensable non-monetary claims *Spade-Wenger* envisions involve situations in which an unlawful contractual term caused the plaintiff some concrete harm, such as being deterred from obtaining a refund or not receiving the contracted-for goods. Here, the Amended Complaint merely alleges that Plaintiff entered into the gym membership contract containing an allegedly misleading cancelation provision, but contains no allegations of

concrete harm, such as that Plaintiff wished or attempted to cancel her membership agreement but was prevented from doing so, or that the cancellation provision somehow impacted her ability to use the gym membership. Thus, Plaintiff did not suffer the harm required in order to be an "aggrieved consumer" capable of asserting a TCCWNA claim. *See Patterson v. Forever 21, Inc.*, No. 16-05087, 2018 WL 5313920, at *5 (D.N.J. Oct. 26, 2018) (holding that disclaimer and indemnification provisions in contract to purchase women's apparel did not violate the TCWNNA because "like the plaintiffs in *Spade*, Plaintiff has not alleged that she was prevented from returning the items or otherwise pursuing any remedies relating to the purchased items or that Defendant attempted to enforce the T&C Provisions to Plaintiff's detriment").

Second, Plaintiff alternatively argues that her case is somehow distinguishable from *Spade-Wenger* because the plaintiffs there "ultimately received the furniture they contracted for" and did not suffer any economic consequences. ECF No. 69 at 6. However, here too, Plaintiff received what she contracted for—the gym membership—and also did not suffer the type of economic consequences necessary to assert a TCCWNA claim. Indeed, the import of *Spade-Wenger* extends far beyond its particular context: since the case was decided, various federal and state courts have relied on the decision in a variety of contexts to find that plaintiffs who similarly did not suffer any concrete, particularized harm were not "aggrieved consumers." *See Patterson*, 2018 WL 5313920, at *5; *Wright v. Bank of Am., N.A*., 456 N.J. Super. 328, 334 (App. Div. 2018) (remanding case and directing the plaintiff to file an amended complaint in case alleging that foreclosure intent notices violated the TCCWNA because plaintiff "could not identify the alleged harm he believes was caused by the pre-suit notices"); *Duke v. All Am. Ford, Inc.*, No. A-0795-15T3, 2018 WL 3596274, at *7 (N.J. Super. Ct. App. Div. July 27, 2018) (dismissing putative class action complaints' TCCWNA claim because the "complaints do not

10

allege that any plaintiff or any member of a putative class has suffered harm or an adverse consequence"). Thus, because *Spade-Wenger* dictates that Plaintiff is not an "aggrieved consumer," the remaining TCCWNA claim must fail.

## IV. CONCLUSION

Accordingly, for the foregoing reasons, Defendants' motion to dismiss Plaintiff's Amended Complaint is granted, and the case, is, therefore, dismissed.


Dated: December 21, 2018 /s/ Freda L. Wolfson
Hon. Freda L. Wolfson
United States District Judge